**In re Mylene LIGGETT, Debtor.**

**Bankruptcy No. 90–B–10413 (PBA).**

United States Bankruptcy Court,
S.D. New York.

July 12, 1990.

---

Rivkin, Radler, Dunne & Bayh by John J. Preefer, Uniondale, N.Y., for EOR One of Manhattan, Inc.

Mylene Liggett, New York City, pro se.

Paul I. Freedman, New York City, for debtor.

## MEMORANDUM DECISION

PRUDENCE B. ABRAM, Bankruptcy Judge.

Mylene Liggett ("Debtor") acting *pro se* filed a second petition under Chapter 11 of the Bankruptcy Code on February 13, 1990. The present Chapter 11 petition was filed only a month after the expiration of the 180 day period during which the Debtor was ineligible to refile. *See* Bankruptcy Code § 109(g)(2). The Debtor's prior Chapter 11 case had been filed in early 1989 and was dismissed by order dated July 28, 1989 at the Debtor's request after two creditors moved to modify the automatic stay to permit them to continue actions to foreclose on 6 Riverview Terrace, New York City (the "Riverview Property").

## STATEMENT OF
## PROCEDURAL HISTORY

The Debtor states in her Affidavit Under Local Rule 52 which accompanied her present petition that her principal asset is the Riverview Property and that the Riverview Property has an appraised value of $5,000,000. The Riverview Premises is a residential brownstone in which the Debtor, her husband, Joseph Liggett ("Joseph"),

who is afflicted with Parkinson's Disease, and their minor son apparently reside.

On October 10, 1989, Bank Leumi Trust Company ("Bank Leumi") conducted a foreclosure sale of the Riverview Property and bid it in for $50,000. Bank Leumi thereafter assigned its interest in the Riverview Property to an affiliate, EOR One of Manhattan, Inc. ("EOR"). EOR moved in mid-November 1989 in the Supreme Court of the State of New York (the "N.Y. Supreme Court") for an order compelling the Debtor, Joseph and all others occupying the Riverview Property to surrender possession immediately. The Debtor and Joseph through their then counsel vigorously opposed EOR's motion. The N.Y. Supreme Court ruled in EOR's favor and issued an order on January 29, 1990 directing the Debtor, Joseph and all others occupying the Riverview Property to immediately surrender possession to EOR (the "Possession Order"). The Possession Order further provided that the Sheriff of the City of New York could place EOR in possession of the Riverview Property if the Debtor, Joseph and any other occupant failed to surrender possession immediately.

A request was made by counsel for the Debtor and Joseph for a stay of eviction under the Possession Order. The request for a stay was denied on February 9, 1990 and the eviction was scheduled for February 12, 1990. The Debtor commenced this case before the eviction was accomplished.

By order to show cause dated February 26, 1990, EOR moved in this court for relief from the automatic stay to permit it to enforce the Possession Order. A hearing was held on EOR's motion on March 12, 1990 at which hearing the Debtor appeared *pro se*. The Debtor requested an adjournment of the hearing for the purpose of procuring counsel. Because the Chapter 11 petition was filed for the primary, if not sole, purpose of staying the enforcement of the Possession Order EOR's prompt motion must have been anticipated, and in light of the magnitude of the litigation in which the Debtor has been involved with Bank Leumi over the years, during which she has been represented by many different counsel, this court declined to grant the request for an adjournment. This court did agree to delay signing an order lifting the stay for a short period and directed that the order be noticed for March 23 so that the Debtor would have a final opportunity to retain an attorney to submit papers on her behalf demonstrating why the stay should not have been lifted.

On March 20, Paul I. Freedman, Esq., contacted counsel for EOR, stated that he had just been retained by the Debtor and requested an adjournment of the March 23 settlement date. That request was denied. Freedman then requested that relief from this court, which declined to adjourn the settlement date but did extend until March 22 the Debtor's time to file opposing papers. It was further agreed that no oral argument would be had unless the Court found that any papers submitted raised a meritorious issue.

Freedman did file opposition papers on March 22, including a motion to reopen. The substance of the papers is that Bank Leumi committed fraud on the Debtor in connection with various loans made to the Debtor and to Westex Corp., a corporation owned by the Debtor and Joseph which filed a Chapter 11 petition in 1982 that was subsequently converted to Chapter 7. In particular, it is alleged that Bank Leumi failed to properly account for various monies and collateral it liquidated.

In addition to the motion papers, on March 23, 1990, the Debtor commenced an adversary proceeding, A.P. 90–5703, against Bank Leumi. The Cover Sheet summarizes the lawsuit as one to recover costs and damages against Bank Leumi, the cause of action being that Bank Leumi has willfully acted to deprive the Debtor of funds owing to her, willfully made false statements that damaged the Debtor and other "agrievous" actions, so as to violate the laws and Constitution of the United States of America.

This court has carefully reviewed all of the new papers and finds no basis for reconsidering its original determination to lift the automatic stay to permit enforcement of the Possession Order. The motion for

reconsideration is therefore denied and the court adheres to its original decision to lift the automatic stay.

## STATEMENT OF FACTS

The Riverview Property was originally jointly owned by the Debtor and Joseph. In 1979 they transferred title to the Riverview Property to the Debtor alone. That transfer was attacked by Helen Liggett ("Helen"), Joseph's first wife, as a fraudulent conveyance and ultimately a State court found the transfer to be fraudulent. See *Liggett v. Liggett*, Index No. 31 19/80, aff'd for reasons stated by Special Term, 109 A.D.2d 642, 487 N.Y.S.2d 532 (1985). While the litigation with Helen was pending, the Debtor transferred title to the Riverview Premises to her sister Marguerite Sibthorpe ("Sibthorpe"), who lives in England. Sibthorpe remained the owner of record of the Riverview Premises notwithstanding the fraudulent transfer determination until March 15, 1989, when a deed from Sibthorpe to J.J. and P. Associates Corp. ("JJ & P") dated April 22, 1988 (the "JJ & P" Deed") was recorded. It was two days after the recording of the deed to JJ & P that the Debtor filed her prior Chapter 11 petition.[1] As a result of the JJ & P Deed, an issue was raised in the Debtor's prior Chapter 11 case as to her interest in the Riverview Property. *See infra* footnote 2.

Just over two months after dismissal of the Debtor's prior case and early on October 10, 1989, JJ & P, the record owner of the Riverview Premises, filed a Chapter 11 petition in this court. The foreclosure sale of the Riverview Property was conducted later that same day. Although JJ & P initially sought to have the foreclosure sale voided because of its Chapter 11 filing, ultimately JJ & P consented to the dismissal of its Chapter 11 petition on January 23, 1990, thus mooting the issue.

According to an unrefuted title search attached to EOR's moving papers as of early 1989 there were 6 mortgages recorded against the Riverview Property with a principal total of $2,125,000 and 31 judgment liens totalling $4,774,529.54. The February 7, 1989 Appraisal attached to EOR's moving papers estimates the value of the Riverview Premises to be $2,750,000 to $3,000,000, an amount well below the total of the recorded mortgages and judgment liens.

The Debtor stated her view of these matters at Schedule B–3 of her petition as follows:

"On October 10, 1989, title of 6 Riverview was held by JJ & P Associates Corp. Bank Leumi did not comply with CPLR 5632 did not advertise and sold it to itself for $50,000 after JJ & P filed Bankruptcy, therefore Bank Leumi violated Section 362 of the Bankruptcy Code, and also did not have the approval of the Bankruptcy Court. Therefore this sale is null and void.

"In 1984, as part of a matrimonial action between my husband [and his] first wife, Justice Taylor of the New York Supreme Court ruled that the earliest conveyance of the house in 1975 was null and void. Which revert the house to my husband and myself."

## DISCUSSION

■ If the Debtor possessed an interest in the Riverview Property, whether legal or equitable, when she commenced this case then any action against such an interest would be subject to the automatic stay provided by Bankruptcy Code § 362(a). *In re Andorra Meat Market, Inc.*, 7 B.R. 744 (Bankr.E.D.Penn.1980). The property rights of the Debtor must be determined by reference to New York law. *See* 4 Collier on Bankruptcy (15th Ed.1990) ¶ 541.07 at 541–30 ("[N]either the [former Bankruptcy] Act nor the [present Bankruptcy] Code provide any rules for determining whether the debtor has an interest in property * * *. Determination of these issues, therefore, requires resort to non-bankruptcy law. Thus in regard to the debtor's interests in real property it will be necessary to look to non-bankruptcy law to determine the nature and extent of such interests.") *See*

---

**1.** Petitions were also filed on that date by or on behalf of Joseph and Sibthorpe.

*also In re Contractors Equipment Supply Co.,* 861 F.2d 241, 244 (9th Cir.1988).

■ Subsection (d)(1) of Code Section 362 provides:

"(d) On request of a party in interest and after notice of a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest."

Although the Code is silent as to what constitutes "cause" other than the lack of adequate protection, it is the conclusion of this court that cause exists for lifting the automatic stay in this case because at the time the petition was filed the Debtor did not have title to the Riverview Property, did not have a legally cognizable right to possession of the Riverview Property nor did she have a valid claim to an equity of redemption with respect to the Riverview Property.

*Debtor Has No Interest in the Riverview Property*

A. No Legal Title

■ The Debtor is not now, nor was she at the time of the October 1989 foreclosure sale, the record owner of the fee title to the Riverview Premises. At the time of the sale, JJ & P was the owner of record of the fee title to the Riverview Property. Whether or not the Debtor was the beneficial owner of the Riverview Premises at that time, as she has alleged in her adversary proceeding, is not significant because she was a party to and participated in the litigation which resulted in the judgment of foreclosure and the sale.[2] *See Dulberg v. Ebenhart,* 417 N.Y.S.2d 71, 75, 68 A.D.2d 323 (1st Dept.1979) (judgment of foreclosure and sale forecloses all parties to the

action and those claiming under them after the filing of the *lis pendens* in the action).

■ The Debtor's argument that the foreclosure sale was ineffective because it occurred in violation of the automatic stay in the JJ & P case is likewise unconvincing. This Debtor was not a beneficiary of the automatic stay in the JJ & P case and therefore whether or not it was violated in that case is irrelevant to the finality of the foreclosure sale as to this Debtor. The courts are very clear in holding that the stay provided in Bankruptcy Code § 362 relates only to actions against *the debtor* and does not operate to stay an action as against any non-debtor parties. *Matter of Johns–Manville Corp.,* 26 B.R. 405, 409 (Bankr.S.D.N.Y.1983), *aff'd,* 40 B.R. 219 (S.D.N.Y.1984); *In re Autobahn Classics, Inc.,* 29 B.R. 625, 628 (Bankr.S.D.N.Y.1983) (the important feature of the automatic stay imposed under § 362 is that it only protects the debtor and does not extend injunctive coverage to nondebtor third parties). Thus, the Debtor's efforts to have this court ignore or nullify the foreclosure sale as to her are unavailing.

B. No Equity of Redemption

■ The Debtor is also precluded from claiming any right of redemption to the Riverview Property. It is well settled that the purchase of property at a court ordered real estate foreclosure sale in New York, conducted before the filing of the petition in bankruptcy, divests the debtor of any interest she or he may have had in the property. *In re Nimai Kumar Ghosh,* 38 B.R. 600 (Bankr.E.D.N.Y.1984); *In re Smith,* 7 B.R. 106 (Bankr.W.D.N.Y.1980); *In re Butchman,* 4 B.R. 379 (Bankr.S.D.N.Y.1980). The foreclosure sale was conducted at a time when no bankruptcy petition was pending as to this Debtor. It is further clear that as regards the right to redemption, the owner of an equity of redemption only has a right to redeem *before*

---

**2.** It is evident that the Debtor knowingly permitted record title to the Riverview Property to remain in Sibthorpe long after the fraudulent conveyance determination. At the time the Debtor filed her first Chapter 11 petition, she also lacked record ownership of the Riverview Premises and moved to dismiss her Chapter 11 petition only after it became evident that both Helen and Bank Leumi would be granted relief from the automatic stay because of her lack of title.

an actual sale under a judgment of foreclosure. *In re Cretella,* 42 B.R. 526, 532 (Bankr.E.D.N.Y.1984); *First Federal Savings & Loan Assoc. of Port Washington v. Smith,* 441 N.Y.S.2d 309, 310, 83 A.D.2d 601 (2nd Dept.1981); *Belsid Holding Corp. v. Dahm,* 207 N.Y.S.2d 91, 92, 12 A.D.2d 499 (2d Dept.1960). Thus, the legal effect of the foreclosure sale has been to cut off any equity of redemption the Debtor might have had in the Riverview Property. *See In re Butchman,* 4 B.R. at 380.[3]

### C. Bare Occupancy Is An Insufficient Possessory Interest

 At the time she filed this Chapter 11 petition the Debtor apparently was in occupancy of the Riverview Property. She did not have any legal right to occupy the Riverview Property however as whatever legally cognizable possessory rights the Debtor may have had in the Riverview Property were terminated by the Possession Order. This court holds that the Possession Order is a finding that the Debtor has no legal or equitable possessory interest in the Riverview Property.

 Even if bare occupancy were deemed to be an equitable interest in the Riverview Property, and thus property within the meaning of Code § 541, it would not assist the Debtor because that interest is so tenuous as to represent merely a scintilla of an interest insufficient to warrant the continued protection of the automatic stay. The bankruptcy courts are consistent in holding that where a lease has been terminated, either by its own terms, by reason of default, or by judicial determination, prior to the filing of the petition, there is no further property interest of the debtor in the premises other than a de facto or technical possessory right, which is insufficient to warrant the continued protection of the automatic stay. *See, e.g., In re Hampton,* 78 B.R. 357, 358 (Bankr.N.D. Georgia 1987) (where lease expired on its own terms, the expiration leaves nothing for the debtor to assume or reject); *In re Consolidated Pier Deliveries, Inc.,* 53 B.R. 523, 529 (Bankr.D.N.J.1985) (where the lease never became property of the estate, the legal effect of such a determination is to render the debtor a mere tenant by sufferance and therefore cause exists for vacating the automatic stay pursuant to Section 362(d)(1)); *In re Andorra Meat Market, Inc.,* 7 B.R. 744, 746 (Bankr.E.D. Penn.1980) (where lease between debtor and landlord had terminated prior to bankruptcy filing, debtor's technical or "de facto" possession of the premises created a de minimus equitable interest in the premises sufficient to invoke the Section 362 automatic stay, but stay under those circumstances was subject to termination or modification for cause); *In re GSVC Restaurant Corp.,* 3 B.R. 491, 494 (Bankr.S.D.N.Y.1980), *aff'd,* 10 B.R. 300 (S.D.N.Y.1980) (where state court issued warrant of eviction, debtor's right to possess was extinguished and stay would be subject to modification); *In re Biron,* 28 B.R. 340, 343 (Bankr.S.D.Ohio, W.D.1983). Any scintilla of an interest the Debtor may have at the filing date because the Possession Order had not yet been executed on is insufficient to warrant continued protection under the automatic stay.

### Debtor's Motion for Reargument

 Because of the lengthy history of litigation between the parties, this court has given careful consideration to the issues raised by counsel in the motion for reconsideration in order that this matter may be brought to a final conclusion. This court is not free to undo the effects of the pre-bankruptcy determinations of a non-bankruptcy forum. Indeed, the Second Circuit has recently admonished the bankruptcy court not to sit in judgment of such rulings. *See Kelleran v. Andrijevic,* 825 F.2d 692 (2d Cir.1987). Consequently, this

---

**3.** The right to redeem *after* a foreclosure sale is purely statutory and although several states still have valid redemption statutes on their books, whatever rights a mortgagor in New York had to redeem subsequent to a foreclosure sale was abolished in 1838 when the Mortgage Redemption Act, which provided that a Mortgagor had the right to redeem from a mortgage foreclosure sale for a period of one year, was repealed. *See* 78 *N.Y.Jur.2d,* Mortgages, Section 389 at 240, *citing North River Ins. Co. v. Snediker,* 10 How.Pr. 310.

court declines to consider the Debtor's various non-bankruptcy objections to the validity of the foreclosure sale as those issues have already been determined by the state court and their determination adversely to the Debtor was subsumed in the granting by the Possession Order. *Compare In re Bona,* 110 B.R. 1012 (Bankr.S.D.N.Y.1990) (on appeal). The reconsideration papers present no new substantive matters which, if known to the court prior to its initial determination, would have altered the decision to lift the stay. Therefore the motion for reconsideration is denied and the court adheres to its original determination.

### CONCLUSION

A separate order lifting the automatic stay has been signed.