**In re Keith A. WALKER, Debtor.**

**Bankruptcy No. 94–14274DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 11, 1994.

Alfred Hemmons, Bethlehem, PA, for debtor.

John Francis Murphy, Doylestown, PA, for Commercial Credit Sav. Bank.

Gary McCafferty, Philadelphia, PA, for Lomas Mortg. USA, Inc.·

William L. Goldman, Jr., Doylestown, PA, for Bucks County Sheriff.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

Edward Sparkman, Standing Chapter 13 Trustee, Philadelphia, PA.

*OPINION*

DAVID A. SCHOLL, Chief Judge.

*A. INTRODUCTION*

Presently before this court in the voluntary Chapter 13 case of KEITH A. WALKER ("the Debtor"), filed on July 6, 1994, is the Debtor's "Expedited" Motion for Temporary Restraining Order and Injunctive Relief, Contempt, and Sanctions for Violations of the Automatic Stay ("the Motion"). The Motion was filed in response to the participation of certain parties, including the Sheriff of Bucks County, in a foreclosure sale of the Debtor's family home located at 186 Walton Drive, Morrisville, PA ("the Property"), on July 8, 1994, two days after the Debtor filed the above-captioned bankruptcy case.

We herein reaffirm our preliminary decision at trial that, although the automatic stay arises only from a valid bankruptcy filing, the Debtor was eligible to file the above-captioned bankruptcy case despite the presence of 11 U.S.C. § 109(g), and hence the stay did arise as a result of the Debtor's most recent bankruptcy filing. In so concluding, we hold that the dismissal of the Debtor's prior bankruptcy for failing to file the requisite Schedules and other papers was neither a "voluntary" act nor was it "willful" under these circumstances.

However, we conclude that, since the Debtor did not have, and has no prospect of obtaining, any title interest in the Property at present, the Sheriff's sale of the Property did not violate the automatic stay. The owner of the Property is, and has at all relevant times been, the Debtor's mother, who has been for some time a debtor in her own case. The Debtor's possessory and alleged leasehold interest in the Property, while itself protected by the stay, did not preclude the sale of his mother's interest at the sale. The Motion will therefore be denied.

*B. FACTUAL AND PROCEDURAL HISTORY*

The current controversy arises in the connection with the understandable, but necessary desperate efforts of Debtor's widowed mother, Jane L. Walker ("Jane"), to save the Property from foreclosure. Jane's initial efforts to save the Property were through a bankruptcy case filed on her behalf under Chapter 11 of the Bankruptcy Code on October 10, 1991, by Alfred Hemmons, Esquire ("Hemmons"), the Debtor's present counsel. Jane is a realtor and professional appraiser who owns or did own several properties in addition to the Property in issue. However, the Property has been the family home for about twenty years. In the course of Jane's case, initially assigned to Judge Thomas M. Twardowski of this court and now transferred to Judge Stephen Raslavich of this court, the first mortgagee on the Property, Lomas Mortgage USA, Inc. ("Lomas"), obtained relief from the automatic stay to foreclose on the Property, apparently by Order of February 10, 1993. After several failed attempts at filing a confirmable plan of reorganization, Jane's case was converted to Chapter 7 on April 5, 1994.

On September 1, 1993, allegedly per the advice of a neighbor-attorney, Robert L. Kramer, Esquire ("Kramer"), Jane conveyed the Property to the Debtor. Thereafter,

when Lomas attempted to foreclose on the Property, the Debtor filed his own Chapter 13 bankruptcy case in this court, Bankr.No. 94–10620DAS ("the First Case"), on February 7, 1994. At that time, the Debtor, who is 23 years of age, had recently graduated from the University of Pittsburgh and had just begun a new career locally as an employee of U.S. Healthcare. Although he professes limited knowledge of his mother's bankruptcy, the Debtor admits that he filed the First Case, with Hemmons as his counsel, in an attempt to help his mother retain the Property.

The Debtor neglected to file his Schedules and other necessary papers at the time he filed his First Case, and we entered a standard form order on February 7, 1994, directing the Debtor do so within 15 days or suffer the dismissal of this case. In the meanwhile, on February 17, 1994, Commercial Credit Savings Bank ("CCSB"), the holder of a second mortgage on the Property, filed a motion for relief from the stay ("the Relief Motion") in the First Case. The Relief Motion was scheduled for a hearing on March 24, 1994. Although the necessary papers were not filed within the 15 days established by our February 7 Order, or a considerable time thereafter, we decided not to dismiss the First Case immediately, but, rather, to wait for the hearing on the Relief Motion in order to learn the parties' positions at that time before acting.

When we convened on March 24, Hemmons requested that we postpone the hearing on the Relief Motion in order that we might first hear and consider an adversary proceeding filed by CCSB to void the transfer of the Property from Jane to the Debtor as violative of, *inter alia*, 11 U.S.C. § 363(b)(1). This proceeding had been filed on February 22, 1994, and was scheduled to be tried on April 7, 1994. The Debtor was, per his testimony on the instant Motion, then in Pittsburgh training for his new job, and could not attend the March 24 hearing. Counsel for CCSB refused to agree to a continuance. Thus, we had no choice but to deny Hemmons' request for a continuance, in light of the strictures contained in 11 U.S.C. § 362(e) as interpreted by *In re Wedgewood*

*Realty Group, Ltd.,* 878 F.2d 693, 696–98 (3d Cir.1989).

The following exchange then took place:

HEMMONS: Well, we only have two alternatives from the defense side, your Honor. *If the Court wishes to dismiss the case it can dismiss the case.* If it wishes to continue it to dismiss—continue it [sic]. If the Court wishes to go ahead—

THE COURT: I don't think I'd dismiss the case, because nobody is—you mean because of the schedules? ... I guess I could take that route.

.    .    .    .    .

CCSB'S COUNSEL: [T]he only problem with the dismissal is if he's going to refile again before the sheriff's sale is set on that [sic], I believe. I mean if I have some assurance that that's not going to happen—

THE COURT: Well, you have 109(g), I suppose that's some assurance isn't it?

CCSB'S COUNSEL: Oh, I know, but none the less if it happens, I mean he's already been the recipient of a fraudulent deed.

.    .    .    .    .

THE COURT: Well, you're aware of 109(g); right, Mr. Hemmons?

HEMMONS: I'm aware of the statute, yes, your Honor.

THE COURT: *And you still want to dismiss the case?*

HEMMONS: *If the Court, if it's the Court's discretion to dismiss the case, yes.*

THE COURT: Well, I wouldn't if you had said you were going to file schedules, but there is in fact a problem *and you're not opposing it I'll dismiss it....* If everybody wants that, okay, I'll dismiss it.

Transcript of March 24, 1994, hearing in the First Case (hereinafter "the Transcript"), at 5, 7, 8 (emphasis added). On that same day, we entered an Order stating that "since the debtor(s) have failed to timely file the documents required by the standing order dated 2/7/94, this case be and the same is hereby DISMISSED."

On March 30, 1994, the Debtor transferred title to the Property back to Jane, per anoth-

er deed prepared by Kramer. Jane testified that this transfer occurred because the United States Trustee's office ("the USTE") had advised Kramer that the September 1, 1993, transfer to the Debtor violated § 363(b)(1) and that the transfer must be undone if he wished to avoid further investigation of his conduct. We note that the USTE participated in the March 24 hearing and the instant hearing on the Motion, apparently believing that Hemmons improperly engineered the transfers of the Property.

Meanwhile, Lomas and CCSB continued to pursue a foreclosure action against the Property and arranged for a sheriff's sale of the Property to be conducted in execution of Lomas' state-court foreclosure judgment on July 8, 1994. Two days before the sale, the Debtor filed the instant Case *pro se*, allegedly retaining Hemmons shortly thereafter.

Hemmons appeared at the Sheriff's office on the morning of July 8 with a copy of Debtor's petition and vigorously attempted to convince the Sheriff to cancel the Sale. Despite Hemmons' efforts, including an unorthodox, ex parte telephone call to chambers in an attempt to convince this court to mediate the dispute, the Sheriff, after a telephone conversation with Lomas' counsel and confirmation with the Recorder of Deeds office that the Property was then titled solely to Jane, was satisfied that the automatic stay from the instant case should not stay the sale. Thus, despite heated exchanges between Hemmons and other interested counsel and Hemmons' public announcement that he believed that the sale was illegal, the sale was conducted as scheduled, and CCSB purchased the Property at the sale.

On Monday, July 11, 1994, the Debtor filed the Motion before us. On July 13, 1994, he also filed an adversary complaint naming LAWRENCE R. MICHAELS, Sheriff of Bucks County, and John Doe (the allegedly unknown purchaser of the sale, apparently CCSB), as defendants and seeking, *inter alia,* an order avoiding the sale. The Debtor sought expedited, *ex parte* consideration of the Motion. Because this court was on vacation during the week of July 11, Judge Raslavich, as emergency judge, entertained the Debtor's expedited Motion *ex parte* and entered an Order dated July 11, 1994, temporarily staying any further proceedings in the foreclosure action pending a hearing on the Motion before us on July 19, 1994. Only CCSB filed a response to the Motion ("the Response"),[1] although counsel for Lomas and the Sheriff and the USTE also appeared and participated actively in the hearing.

After an initial summary consideration of the possibly-determinative 11 U.S.C. § 109(g) issue which had been raised by CCSB in its Response, we found that § 109(g)(2) had not been violated. We then heard extensive testimony from the Debtor, Jane, and Gerard Mullen, the Chief Deputy Sheriff of Bucks County. Consistent with our statements immediately following the hearing, we entered an Order on July 20, 1994, stating, in paragraph one, as follows:

1. All claims [of the Debtor] against Lawrence R. Michaels and any other representatives of the Bucks County Sheriff's Office are DENIED and DISMISSED. While there is limited authority for the principle that a bankruptcy of a party who is not a direct party to a contractual relationship may effect a stay on actions between the direct parties to the contractual relationship, *e.g., MacArthur Co. v. Johns–Manville Corp.,* 837 F.2d 89, 91–93 (2d Cir.1988); *In re 48th St. Steakhouse, Inc.,* 835 F.2d 427, 430–31 (2d Cir.1987) [, *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988)]; *A.H. Robins Co. v. Piccinin,* 788 F.2d 427, 430–31 [994, 999] (4th Cir.1986) [, *cert. denied,* 479 U.S. 876 [, 107 S.Ct. 251, 93 L.Ed.2d 177] (1986)]; *In re ORFA Corp. of America,* 1990 WL 153981 (Bankr.E.D.Pa. Oct. 10, 1990); *In re Capodanno,* 83 B.R. 285, 288–89 (Bankr. E.D.Pa.1988); *In re Black,* 58 B.R. 60, 61–

---

1. The Debtor asserts that CCSB has no standing to be heard on this matter because it is only a creditor of Jane, not of the Debtor. This contention contradicts the Debtor's own Schedules, in which he lists CCSB as a secured creditor. CCSB has a lien on, and is the ostensible title holder of, the Property in which Debtor asserts an interest and which he is striving mightily to include in his bankruptcy estate. Therefore, we conclude that CCSB certainly is a party in interest with a right to be heard in this matter.

62 (Bankr.E.D.Pa.1986); and *In re Golden Plan of California, Inc.*, 39 B.R. 551, 555 (Bankr.E.D.Cal.1984), *on remand,* 72 B.R. 205 (Bankr.E.D.Cal.1986), we do not believe that it constitutes a willful or even actionable violation of the automatic stay for a state official to reasonably (after checking the deed book and finding the Debtor out of title) refuse to acknowledge the effect of the stay of a bankruptcy filing by a non-party to that relationship.

In that Order, we also gave the Debtor and the parties opposing the Motion an opportunity to file briefs supporting their respective positions on or before August 2, 1994, and August 5, 1994, respectively. The Debtor and CCSB submitted timely Briefs.

## C.  DISCUSSION

### 1.  THE INSTANT CASE IS NOT SUBJECT TO DISMISSAL UNDER 11 U.S.C. § 109(g)

■ Although this court preliminarily determined that the Debtor's bankruptcy filing did not violate 11 U.S.C. § 109(g), we will first address that issue. That Code section provides as follows:

> Notwithstanding any other provision of this section, no individual ... may be a debtor under this title who has been a debtor in a case pending under this title in the preceding 180 days if—
>
> (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case;  or
>
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

We revisit this issue because of the importance of its application to this case and to other future cases. At the outset, we note that a filing contrary to § 109(g) is void *ab initio* and does not effect a valid automatic stay. *See Miller v. First Federal Savings & Loan Ass'n of Monessen,* 143 B.R. 815, 820 (Bankr.W.D.Pa.1992). Therefore, this issue is vital to the instant Motion, as well as addressing several recurrent actions which periodically arose about the scope of § 109(g).

### a.  The Debtor Did Not Voluntarily Dismiss the First Bankruptcy;  Therefore, § 109(g) Does Not Compel Dismissal of This Case

■ As we indicated at the July 19 hearing, the decision of whether the Debtor's instant filing violated 11 U.S.C. § 109(g)(2) was a close call. As can be seen from the Transcript passages quoted at pages 4–5 *supra,* this court suggested that § 109(g) might have applied if the Debtor had attempted to file a subsequent bankruptcy within 180 days of the dismissal of the First Case. It is equally clear that counsel for CCSB diligently attempted to confirm his apparent understanding that § 109(g) would bar a subsequent filing by the Debtor with this court, and that Hemmons was warned by this court of the operation of § 109. Nonetheless, the § 109(g) issue was not before the court at that time, nor could an issue that relates solely to hypothetical subsequent filings be summarily resolved at that time. Thus, we observe that a decision as to whether a filing violates § 109(g) must be reserved until that filing is made. It should be noted that sanctions under Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 9011 may be utilized to deter a debtor or counsel from filing cases in violation of that Code section without just cause. *See In re Stathatos,* 163 B.R. 83, 88 (N.D.Tex.1993); *In re Peia,* 145 B.R. 749, 752–53 (Bankr.D.Conn.1992); and *In re Geller,* 96 B.R. 564, 566–69 (Bankr.E.D.Pa.1989).

■ Because barring an individual totally from bankruptcy relief is a drastic measure, we have interpreted § 109(g) very narrowly. *See In re Arena,* 81 B.R. 851, 854 (Bankr. E.D.Pa.1988); and *In re Samuel,* 77 B.R. 520, 522 (Bankr.E.D.Pa.1987). On the other hand, when the facts of a case fit squarely within the parameters of § 109(g), we cannot let the equities, which may run in favor of a debtor, prevent us from applying the statute. *Id.  Accord, Kuo v. Walton,* 167 B.R. 677, 679 (M.D.Fla.1994). *Cf. Tooke v. Sunshine Trust Mortgage Trust # 86–225,* 149 B.R. 687, 690–93 (M.D.Fla.1992) (court surveys the cases on each side of the dispute concerning the mandatory versus discretionary na-

ture of § 109); and *In re Keul,* 76 B.R. 79, 81–82 (Bankr.E.D.Pa.1987) (Fox, J.) (court declines to decide whether § 109 is discretionary or mandatory).

■ In this case, the facts do not fit squarely within the requirements of § 109(g)(2). That subsection applies only when a debtor voluntarily dismisses a case after a motion for relief from the stay has been filed against the debtor. Here, the Debtor consented to *our* dismissal of the case. Hemmons was careful, in the colloquy quoted from the Transcript at pages 4–5, *supra,* to characterize the dismissal as an act of this court. Indeed, even if Hemmons had not been so careful with his characterizations, it is nonetheless clear that only this court, on motion of the USTE or *sua sponte,* can dismiss a case because of the debtor's failure to file Schedules. *See* 11 U.S.C. § 1307(c)(10); 11 U.S.C. § 105(a); *In re Henderson Ranches,* 75 B.R. 225, 226–27 (Bankr.D.Idaho 1987); and *In re Daily Corp.,* 72 B.R. 489 (Bankr.E.D.Pa.1987).

We conclude, at least under the instant circumstances, that the Debtor's failure to oppose our dismissal of his case was not tantamount to a voluntary dismissal. We note that, in the colloquy on March 24, Hemmons did not actively seek a dismissal, but merely accepted this resolution as a fall-back position when his request for a continuance was denied. *See, e.g., Arena, supra,* 81 B.R. at 855 ("We agree with the decisions in [*Gamble*] and [*Nelkovski*], that failure to appear at a dismissal hearing is not the equivalent of a voluntary dismissal."); *In re Gamble,* 72 B.R. 75, 76–77 (Bankr.D.Idaho 1987) ("[T]he Debtors' failure to object to the Motion to Dismiss, taken alone, is not sufficient to bring this case under the purview of 11 U.S.C. § 109(g)(2)."); *In re Nelkovski,* 46 B.R. 542, 544 (Bankr.N.D.Ill.1985) ("Failure to oppose dismissal, without more, is not enough to bar the debtor from refiling within the 180–day period of 109[g].") Nor do we find that the Debtor contrived to have the court dismiss the First Case, which might constitute a violation of § 109(g)(2). *See In re Elfman,* 1988 WL 98776, slip op. at *1 (Bankr.E.D.Pa. Sept. 23, 1988). Therefore,

§ 109(g)(2) does not require our dismissal of the Debtor's current bankruptcy case.

### b. It Was Not Established That the Debtor "Willfully" Failed to Abide by Our Order Requiring Him to File His Schedules; Therefore, § 109(g)(1) Does Not Support Dismissal of This Case

■ There is no dispute that Debtor failed to comply with the form order dated February 7, 1994, requiring him to file his Schedules and other documents within 15 days. Indeed, he had not filed these documents as of the March 24 hearing, and, on that date, we dismissed the First Case because those papers were not filed. Thus, if we determined that the Debtor's failure to comply with our order was "willful," then the Debtor would not have been eligible for bankruptcy protection at the time that he filed the instant case.

"Willfulness" is not defined in the Bankruptcy Code. Therefore, courts have given the term its common meaning. "Accordingly, a debtor's conduct is 'willful' within the meaning of section [109(g)(1)] when it is 'intentional, knowing and voluntary, as opposed to conduct which is accidental or beyond the person's control.' " *In re McIver,* 78 B.R. 439, 441 (D.S.C.1987), quoting *In re Ellis,* 48 B.R. 178, 179 (Bankr.E.D.N.Y.1985). *Accord Arena, supra,* 81 B.R. at 853; *In re Fulton,* 52 B.R. 627, 633 (Bankr.D.Utah 1985); *In re Morris,* 49 B.R. 123, 124 (Bankr. W.D.Ky.1985); and *Nelkovski, supra,* 46 B.R. at 544. Willfulness may be established by "(1) an admission of intentional conduct by the debtor; (2) a conclusion that denials of intentional conduct by the debtor lack credibility; or (3) our drawing adverse inferences from all of the circumstances attendant to the filing." *Arena, supra,* 81 B.R. at 853.

In *Arena,* we held that the moving party bears the burden of proving willfulness. *Id.* at 852. *But cf. Fulton, supra,* 52 B.R. at 634. Here, neither CCSB, the only party answering and filing a Brief in opposition to the Debtor's Motion, nor any other party, argued so much as the applicability of § 109(g)(1) to the Debtor's present circumstances. Rather, CCSB originally focused on § 109(g)(2) in its Answer and, in its Brief, concedes that this

court has already ruled on the § 109(g) issue in the Debtor's favor. Ironically, it is only the Debtor, in his Brief, who sees fit to address § 109(g)(1). Because we conclude, on further reflection, that this issue rises above the level of a "straw man" argument raised by the Debtor gratuitously only to obfuscate the "real" § 109(g)(2) issue, we address it here.

The principal explanation given by the Debtor for his failure to file the required Schedules and other documents relative to the First Case (or to in fact attend the March 24 hearing as well) was his necessity to attend training in connection with his new job, which kept him out of town through at least March, 1994. He also suggested that his absence from Philadelphia and his reliance on Jane to forward his mail may have had something to do with his failure to file his papers. *Compare Arena, supra,* 81 B.R. at 854 (the debtor's failure to attend hearing on motion to dismiss was not willful because the notice of the hearing was allegedly intercepted by the debtor's former wife and destroyed).

The strength of these reasons for failure to file the requisite Schedules was, in our judgment, far from overwhelming. Unlike the *Arena* debtor, the instant Debtor does not assert that Jane intercepted and destroyed his mail, but merely that she received it for him and either held it or forwarded it to him in Pittsburgh. Clearly, the Debtor received some of the notices and pleadings from the First Case, because he filed a response to CCSB's Relief Motion prior to the dismissal of that case. Finally, the Debtor filed a bankruptcy in this court and gave a Philadelphia-area address as his residence. Under these circumstances, increased vigilance to developments in his Case was necessary, and the impression is left with this court that, having filed the First Case principally for the benefit of his mother, the Debtor thereafter ignored his continuing responsibilities under the Code because they proved inconvenient.

This court has located two cases which have held that a dismissal of a bankruptcy case because of the debtors' failures to file requisite documentation in support of their respective bankruptcy cases fell within the scope of § 109(g)(1). *Miller, supra,* 143 B.R. at 818–19 ("The most reasonable inference is that the [pro se debtor's] failure to comply with orders requiring debtors to file certain schedules and other documents was intentional or, at the very least, was the result of 'plain indifference,'" and therefore § 109(g)(1) applies); and *In re King,* 126 B.R. 777, 780 (Bankr.N.D.Ill.1991) ("Debtors willfully failed to appear before the court in proper prosecution of that case in that they failed and refused to file schedules of their creditors and their Statement of Affairs despite their knowledge of the information needed, despite knowledge of their obligation to do so, and despite having ample time within which to do so.").

However, the *King* debtors were found to be experienced "bankruptcy recidivists" even before they filed the case the dismissal of which prevented them from filing a subsequent case on the basis of § 109(g)(1). 126 B.R. at 779. The court hence found that they "had detailed knowledge of their creditors and affairs, and were well able to file the requisite schedules and Statement." *Id.* The *Miller* debtor was found to have "demonstrated a sophisticated understanding of matters pertaining to bankruptcy and ability to express himself which would make him the envy of some attorneys who practice in this court." 143 B.R. at 819. When such sophisticated debtors failed to file their Schedules and other documentation, the respective courts concluded quite easily that the dismissals of their cases for failure to make these filings were tactical maneuvers totally controlled by the debtors.

The failures of less sophisticated debtors to file necessary documents have not been consistently found to have been "willful" acts giving rise to a § 109(g)(1) ban upon subsequent bankruptcy refilings. Judge Raslavich of this court, in *In re Hilton,* 30 F.3d 1486 (Bankr.E.D.Pa.1994), refused to invoke § 109(g)(1) against a debtor who failed to file the requisite documentation *and* to attend his meeting of creditors in a prior case. Rather, the court accepted, as credible and inconsistent with willfulness, the debtor's contention that a broken computer and a failure to receive notice of the creditors'

meeting excused the filing of the Schedules and attendance at the meeting, respectively. Slip op. at 6–8.

Similarly, in *In re Burgart*, 141 B.R. 90 (W.D.Pa.1992), the court declined to attribute willfulness, pursuant to § 109(g)(1), to the debtors' failure to file a plan in their prior Chapter 13 case, resulting in its dismissal. Rather, the court affirmed the bankruptcy court's decision that the prior dismissal could be characterized as attributable to excusable "technical problems." *Id.* at 91.

The facts of this case appear to this court to be more in line with those of *Hilton* and *Burgart* than those of *Miller* and *King*. The prior case was the Debtor's first filing and, although he is an intelligent young man, there is no indication that the Debtor (or, for that matter, his mother, of whom the same can be said) had any degree of sophistication in bankruptcy matters. The Debtor's excuses for non-compliance with the requirement that he file the necessary documentation are certainly no worse than the explanation of the *Arena* debtor that he simply forgot about the meeting of creditors, 81 B.R. at 854, and the inconsistency of the actual facts and those alleged in his pleadings, which attempted to attribute his non-appearance to what proved to be an irrelevant vehicular accident. *Id.* at 853–54.

We therefore find the calculated, contrived sort of dismissal and refiling sequence which we held in *Arena* was necessary to give rise to § 109(g)(1) in close cases was unproven here. This case will therefore not be dismissed on § 109(g)(1) grounds nor on § 109(g)(2) grounds.

2. *THE DEBTOR'S MOTION MUST NEVERTHELESS BE DENIED BECAUSE THE DEBTOR LACKED A SUFFICIENT INTEREST IN THE PROPERTY ON JULY 8, 1994, TO ALLOW THE AUTOMATIC STAY FROM THIS BANKRUPTCY CASE TO PREVENT THE SHERIFF'S SALE OF THAT DATE FROM GOING FORWARD*

■ Even though we have decided the § 109(g) issue in favor of the Debtor, we must nevertheless conclude that the automat-ic stay arising as a result of the instant bankruptcy case was not violated when the July 8, 1994, Sheriff's sale of the Property occurred. At the outset, we observe that it is indisputably clear that the Debtor did not hold any record interest whatsoever in the Property as of July 8, 1994. The Property deeds entered into evidence make it clear that Jane is and has been the sole title holder of the Property since March 30, 1994.

■ The Debtor's alleged "testamentary" interest in the Property does not alter this result. *See* pages 209–210 *infra*. Contrary to Debtor's suggestion, there is no evidence that Debtor became co-owner of the Property with Jane after his father's death in 1990, and significant evidence directly to the contrary has been presented. The September 1, 1993, deed through which Jane alone purportedly transferred title of the Property to the Debtor appears to establish that the Property was held by Jane and her late husband by the entireties, as would be common of married persons, and consequently became entirely hers upon her husband's death. Furthermore, in the March 30, 1994, deed, the Debtor transferred his entire interest in the Property back to Jane. Because the Debtor reserved no interest in the Property to himself in this latter deed transfer, no scintilla of title-interest in the Property ever became part of the Debtor's estate in the instant bankruptcy case.

In our Order of July 20, 1994, in which we dismissed the Sheriff and his agents as parties liable for any stay violation, quoted at pages 201–02 *supra*, we cited several cases the potential application of which motivated us in refraining from denying the Motion. We expected that the parties would discuss these cases in their Briefs. These cases, in our mind, were the leading cases which fashioned exceptions from the general rule that only a debtor's own property interests are affected by the automatic stay. *Cf. In re University Medical Center*, 82 B.R. 754, 757 (Bankr.E.D.Pa.1988), citing *Personal Designs, Inc. v. Guymar, Inc.*, 80 B.R. 29, 30 (E.D.Pa.1987).

Oddly enough, the Debtor neither cites nor discusses any of these cases in his Brief.

This may reflect the Debtor's perception that the results of these cases are irrelevant to the disposition of the instant Motion. Our only response to such a perception would be that, if we believed the results of these cases to be irrelevant to the Motion before us, we would have denied the Motion from the bench at the time of the hearing without putting the parties to the trouble of preparing Briefs.

The arguments in fact pressed by the Debtor in lieu of the precedents established in these cases can, moreover, be disposed of quite easily. Much of the Debtor's Brief is devoted to an attempt to apply the result in *In re Graves*, 142 B.R. 115 (Bankr.E.D.Pa. 1992), *aff'd*, 156 B.R. 949 (E.D.Pa.1993), *appeal pending*, No. 93–11709 (3d Cir.), to the instant fact-situation. In *Graves*, we held that the debtor, as an heir to her father, the late former co-owner of her long-time residence, was entitled to notice of a sheriff's sale of her residence by the first mortgagee, pursuant to Pennsylvania Rule of civil Procedure ("Pa.R.Civ.P.") 3129.1 and 3129.2. We also held that the knowledge of the second mortgagee, who purchased the property at the sale, that the debtor was entitled to such notice, but had not received same, eliminated the second mortgagee's bona fide purchaser status.

The important distinction between the facts of *Graves* and those of the instant case is that the *Graves* debtor was, by reason of her father's death, a part-owner of her residence at the time of its sale. The instant Debtor, meanwhile, is not presently an owner of the Property, nor did he have any interest whatsoever in the Property as of the date of the sale. Only an "owner" of, or another party who has a present interest in, a property is entitled to notice of a sale of that property pursuant to Pa.R.Civ.P. 3129.1(b). *Graves* is, therefore, clearly inapplicable to the instant Motion.

We also note that nothing in the Motion itself or the record could be fairly interpreted as raising the state-law notice issue determinative of the result in *Graves*. The respondents to the instant Motion therefore had no opportunity to present evidence on this issue at the hearing on July 19, and we would therefore refrain from ruling on this issue in favor of the Debtor at this time in any event.

The Debtor presents a relatively brief discussion of the issue actually pleaded in the Motion and concerning which evidence *was* presented at trial, *i.e.*, whether the automatic stay arising from the Debtor's bankruptcy can be extended to bar the Sheriff's sale of the Property, which is and was, at all pertinent times, owned exclusively by his mother. Moreover, this brief discussion is filled with assertions of undisputed legal propositions which have very little relevance to the finer points of the issue at hand, *i.e.*, it argues that the stay is a fundamental bankruptcy protection which arises even if other parties are unaware of the filing and it extends to all actions against the Debtor's estate. These issues are largely irrelevant because none of the respondents dispute knowledge of the Debtor's bankruptcy prior to the sale nor do they dispute the general broad scope of the stay. What they do dispute is whether the stay can be extended to the Debtor's interest in the Property, which is merely his status as the son of the owner who has in the past and now has once again resumed habitation of his mother's home.

■ The cases cited by the court in the July 20, 1994, Order provide at least a basis for making an argument that the stay extends to the instant Sheriff's sale. However, on clear reflection, we do not believe that any of these cases could be read to extend the effect of the automatic stay arising from the Debtor's bankruptcy case so far as to prevent the sale of his mother's Property, especially when the stay arising from her own bankruptcy has been affirmatively lifted in a prior order of the bankruptcy court.

Several of these cases, notably *Johns–Manville, A.H. Robins*, and the alternative holding of *ORFA Corp.*, represent extensions of the stay, clearly applicable to the debtor, to non-debtors. These cases are a subset of those cases which have utilized 11 U.S.C. § 105(a) to extend the automatic stay to third parties, such as non-debtor officers of a corporate debtor, when a series of stringent requirements are met, *i.e.*, irreparable harm to the debtor's estate if no stay extension is

allowed, likelihood of a successful reorganization, balancing the harm to third parties, and consideration of the public interest. *See also, e.g., In re Eagle–Picher Industries, Inc.,* 963 F.2d 855, 858 (6th Cir.1992); *In re Delaware River Stevedores, Inc.,* 129 B.R. 38, 42 (Bankr.E.D.Pa.1991); *University Medical Center, supra,* 82 B.R. at 757; and *In re Monroe Well Service, Inc.,* 67 B.R. 746, 752–53 (Bankr.E.D.Pa.1986).

It must be emphasized that these cases reflect that § 105(a) is to be sparingly applied to extend the scope of the automatic stay beyond application exclusively to debtors, and that a strict showing of all of the requirements of § 105(a) referenced in the foregoing paragraph is necessary to so extend it. Initially, we note that the Debtor did not undertake to prove these elements, *e.g.,* he offered no proof that he could produce a viable Chapter 13 plan, as would be necessary to save the Property. However, a more fundamental difficulty with applying the reasoning of these cases to the instant facts is that the Debtor is not seeking to extend the application of the automatic stay to certain select third parties in certain specific situations. Rather, he is attempting to broaden the application of the automatic stay as to himself. This distinction renders those cases of very limited assistance to the Debtor.

Several of the other cases, notably *48th St. Steakhouse, Capodanno, Golden Plan,* and the other alternative holding of *ORFA Corp.* address the apparently more pertinent issue of when a debtor's interest in property is sufficient to cause the stay from the debtor's bankruptcy to affect a relationship between non-debtors. Thus, in *48th St. Steakhouse,* the debtor's status as sub-tenant of a property was held to stay the landlord's termination of the original tenant's lease. In *Capodanno,* the debtors' status as lease-purchasers of a property was said to have a possible effect on any attempt at foreclosure of the mortgage of their lessor-vendors. In *Golden Plan,* the debtor's status as a junior mortgagee was held to impact the foreclosure on a first mortgage. In *ORFA Corp.,* the debtor was the licensee of a waste-disposal process li-cense and the licensor attempted to terminate the interests of the debtor's sub-licensee.

The distinction between the above cases and the instant case is that the respective debtors in those cases held an undisputable legal interest in the property subject to foreclosure or lease-termination. We have previously held that the Debtor holds no interest in the Property. Indeed, we observed, at pages 205–06 *supra,* that whatever present legal interest he held in the Property was deeded absolutely to Jane on March 30, 1994. Hence, these cases are clearly distinguishable from the instant case and cannot be relied upon by the Debtor in support of the Motion.

Since the entry of the Order of July 20, 1994, we have become aware of several other cases, some of which are cited by CCSB in its Brief, which present facts closer to those of the instant case than the facts of the foregoing cases and which reject the argument which the Debtor must, in our view, make successfully to succeed in prosecuting the Motion.

One such case is *In re Torrez,* 132 B.R. 924 (Bankr.E.D.Cal.1991). In that case, the owners of several parcels of encumbered property transferred a number of these properties to their children before filing bankruptcy. *Id.* at 927–30. A bank, which had a security interest in all of the parcels of real estate, foreclosed on only those properties transferred to the children. *Id.* The debtors tried to attack the foreclosure afterward, claiming that they held junior mortgages on the parcels. *Id.* at 937. An intervenor aligned with the debtors also argued that the debtors held both possessory and leasehold interests in the parcels which were protected by the automatic stay. *Id.* at 938. The bankruptcy court disagreed. Noting that the "protections of the automatic stay only enure to the benefit of the debtor, property of the debtor, or property of the estate," the court pointed out that property belonging to parties other than the debtors were not protected by the stay arising in debtors' case. *Id.* Because the debtors' schedule of assets never listed their alleged junior mortgage interests in the parcels, the court concluded that the parcels were not part of the debtors' estate

and hence were not protected by the automatic stay. *Id.* at 938–40.

Moreover, the court thusly concluded, *id.* at 940–41, that the debtors' possessory interest in the parcels, while itself protected by the stay, was not an impediment to the bank's foreclosure:

> Debtors also advance that the foreclosure violated the automatic stay in that their residence is located on the property foreclosed upon. However, the distinguishing factor is that the non-judicial foreclosure only affects legal title to the property and not any possessory right of the Debtors.
>
> .     .     .     .     .
>
> Debtors possessed no interest in the properties includable as estate property under the contemplation of 11 U.S.C. § 541(a). The only interest Debtors possessed respecting the property is a possessory interest. Consensual and permissive presence and possession is not a legal or equitable interest includable as estate property. Contrary to the contentions advanced by the Debtors ..., Debtors, to date, still retain their possessory interest. The foreclosure has not had the effect of removing debtors from their residence.

Finally, the court concluded that the debtors' alleged lease, which was also not listed in their schedules and statements, would not have prevented the bank from foreclosing on the parcels. *Id.* at 940–41. Thus, the court held that the bank did not violate the stay when it foreclosed on the childrens' parcels.

Similarly, in *In re Pestritto,* 108 B.R. 850, 851–52 (Bankr.S.D.Ga.1989), the bankruptcy court noted that it would be appropriate to extend the stay of a debtor's bankruptcy to actions against non-debtor property only when such an action would "directly interfere with Debtor's reorganization efforts." *Id.* at 852. However, the court stated that,

> [i]n the case at hand, the Bank seeks to foreclose upon property which is owned by the Plaintiffs and in which the Debtor had transferred all of its legal and/or equitable interest prior to filing bankruptcy. Therefore, the Bank's proposed foreclosure is not an action against the Debtor, the Debtor's property, or the Debtor's estate. Nor is it an action against a third party whose interests are "intimately intertwined" with the Debtor.... Therefore, the proposed foreclosure by the Bank is not subject to the automatic stay under Section 362.

*See also In re Comcoach Corp.,* 698 F.2d 571, 574 (2d Cir.1983) (a mortgagee was not a party in interest in debtor/tenant's bankruptcy and had no standing to seek relief from the stay; therefore, the mortgagee could proceed with its foreclosure action against the property in which debtor was a tenant because such action would not affect debtor's tenancy); *In re Grimes,* 147 B.R. 307, 316 (Bankr.E.D.N.Y.1992) (the debtor's status as the alleged victim of a fraudulent deed transfer, which the court failed to credit, did not give rise to the automatic stay except as to her possessory interest in her residence); *In re Liggett,* 118 B.R. 213, 218 (Bankr.S.D.N.Y. 1990) ("Even if bare occupancy were deemed to be an equitable interest in the [realty in issue], and thus property within the meaning of Code § 541, it would not assist the Debtor because that interest is so tenuous as to represent merely a scintilla of an interest insufficient to warrant the continued protection of the automatic stay."); *In re Newman,* 92 B.R. 598, 599 (Bankr.S.D.N.Y.1988) ("[A] foreclosure action by [the mortgagee] in which the [debtor/tenant] is not named as a party will not affect the estate and no permission is required from this court before it can be commenced."); and *In re Juneau's Builders Center, Inc.,* 57 B.R. 254, 256 (Bankr.M.D.La.1986) (foreclosure of a property in which the debtor held a leasehold interest is not an "act or action against the debtor, against property of the debtor, or against property of the estate, [and therefore,] there was no violation of the stay.").

■ We note that the conclusion that the Debtor has no legal ownership interest in the Property such as would stay the sale is not made without a recognition that the Debtor's possessory interest in the Property is property of the estate under 11 U.S.C. § 541 which cannot be terminated without relief from the automatic stay. *See, e.g., In re Atlantic Business & Community Corp.,* 901 F.2d 325, 328 (3d Cir.1990) ("[A] possessory interest in real property is within the ambit

of the estate in bankruptcy under Section 541, and thus the protection of the automatic stay of Section 362."). *Accord, e.g., Torrez, supra,* 132 B.R. at 940–41; and *Liggett, supra,* 118 B.R. at 218. However, no party is threatening the Debtor's possessory interest at this point. When that time comes, however, it is clear that, in light of the Debtor's now *bare* possessory interest, relief will come easily.[2]

Several other issues deserve some brief attention. One arises from *Black, supra,* in which former Chief Judge Goldhaber of this court held that a debtor-husband, presently holding title to a property with his wife by the entireties pursuant to a recent deed from his wife, the original purchaser of the property, was protected by the automatic stay[3] when the wife's mortgagee attempted to foreclose. The principal distinction between *Black* and the instant case is that the *Black* debtor became a part owner of the property in light of the deed to the entireties entity including him by his wife, at least shortly prior to the sale of the property. In that respect, the *Black* case is representative of a line of cases in which debtors have been deemed owners or equitable owners of properties originally titled to other parties, and where the equitable interest was thereafter memorialized by a deed to the debtor just before a sheriff's sale and a bankruptcy filing. *See, e.g., In re Taylor,* 96 B.R. 584, 589–90 (Bankr.E.D.Pa.1989); *In re McLaughlin,* 96 B.R. 554, 557–58 (Bankr.E.D.Pa.), *aff'd,* C.A. Nos. 89–2779, 89–3672, 89–3748 (E.D.Pa. Sept. 18, 1989); and *In re Everhart,* 87 B.R. 35 (Bankr.N.D.Ohio 1988). *But see In re Kelly,* 67 B.R. 508 (Bankr.S.D.Miss. 1986); *In re Nelson,* 66 B.R. 231 (Bankr.

D.N.J.1986), *aff'd,* C.A. No. 86–3724 (D.N.J. May 4, 1987), *aff'd,* 838 F.2d 1207 (3d Cir. 1988); *In re Rye,* 54 B.R. 180 (Bankr.D.S.C. 1985); and *In re Green,* 42 B.R. 308 (Bankr. D.N.H.1984).

However, the instant Debtor is not presently a grantee of the Property. Nor could he be, as Jane, despite her protests that her transfer of the Property to the Debtor in September, 1993, may have been permitted by an Order entered by Judge Twardowski in her bankruptcy case authorizing her to sell certain of her property,[4] apparently agreed that the September transfer should be undone, via the March 30, 1994, deed back to her. She has made no attempts to transfer this Property to any party, including the Debtor, since. In fact, as we note at pages 205–06 *supra,* because the Debtor conveyed the Property, without reservation, back to Jane in the March 1994, he is precluded from asserting any legal interest in the Property.

The Debtor also claims that his statuses as (1) the probable heir to the Property from Jane; and (2) a tenant of the Property by an alleged lease-like arrangement in which he contributes substantial sums to the household, which includes his mother and several step-siblings (estimated at $350 to $500 every two weeks) in exchange for his right to live there, both provide him with sufficient interests in the Property to extend the automatic stay to him.

The simple answer to the claim of the Debtor's right to an inheritance of the Property is that, since Jane is alive and well, this claim is too tenuous to give rise to a property interest. Jane may survive the

---

2. We note that CCSB filed a motion seeking relief from the automatic stay on July 21, 1994, which is now listed for a hearing on September 1, 1994. However, that motion appears to have been influenced by CCSB's original misconception that the Property was still in the Debtor's name. It seeks only to have this court order that the Debtor's bankruptcy was no bar to the sale and that the Sheriff may proceed to finalize the sale. That relief has already been granted in this Opinion and Order, apparently rendering that motion moot. A motion seeking relief to dispossess the Debtor would apparently have to take a different form.

3. Judge Goldhaber did, however, grant the mortgagee relief from the automatic stay for cause, rendering his decision regarding the application of the automatic stay in the nature of dictum.

4. The respondents argued vigorously at the hearing that the Order applied only to certain other realty holdings of the Debtor, not the Property in issue. We need not resolve this issue in order to resolve the issues before us, and therefore we do not do so.

Debtor. Or she may write a new will which excludes him. *Cf. In re Evans,* 120 B.R. 817 (Bankr.E.D.Pa.1990); and *In re Evans,* 114 B.R. 434 (Bankr.E.D.Pa.1990) (a debtor may have standing to assert claims of a decedent only after official appointment as the decedent's representative).

The Debtor's alleged leasehold interest in the Property is simply too vague, and too obviously contrived to meet the current difficulties in which Jane and he find themselves, to be recognized as a legitimate landlord-tenant relationship between Jane and the Debtor. Moreover, as the decisions in *Comcoach, Neuman,* and *Juneau's Builders,* cited at page 208 *supra,* indicate, it is not clear that a debtor-tenant's leasehold interest, especially when that leasehold is not directly affected by the foreclosure, is sufficient to stay a foreclosure on the property of the landlord.

One final issue bears mention. Relief to proceed to foreclose the Property has already been granted as to Jane, the previous and now present owner of the Property. This court cannot allow a debtor's creative contrivances to require mortgagees to litigate stay motions again and again and again in this court before foreclosure can occur. Specifically, the court cannot permit foreclosures to be suspended while every member of a household takes a turn at a bankruptcy case, each of which, under the theory of the Debtor in support of this Motion, could succeed in staying a foreclosure. If this court sustained the instant Motion and thereafter granted relief to Lomas or CCSB to proceed with foreclosure under 11 U.S.C. §§ 362(d)(1) or (d)(2), the Debtor's step-siblings residing in the Property could conceivably thereafter follow with his or her own case, each of which could take the same course as the Debtor's case. We could also conceive of a gridlock in Chapter 11 real estate cases if mortgagees could proceed with foreclosure only after wading through a series of bankruptcies of the debtor-mortgagor's tenants.

The court is well aware of its need to exercise an ability to distinguish abuses from legitimate causes, and not to stifle legitimate causes because of assertions of doomsday scenarios which can arise from abuses.

However, the instant Motion does not strike the court as a particularly "legitimate cause." Jane, with the Debtor attempting to serve her interests, have had numerous opportunities to preserve her properties, including the instant Property. Whatever else can be said about Hemmons' advocacy on her behalf, it has not been lacking in vigor and effort. This case is hence borderline at best as a "legitimate cause," and it therefore represents a poor vehicle to extend the contours of the automatic stay beyond its normal bounds.

## D. CONCLUSION

For all of the foregoing reasons, although we conclude that the Debtor's instant bankruptcy case should not be dismissed as filed in violation of 11 U.S.C. § 109(g), we nonetheless conclude that the Sheriff's sale of the Property in issue was not conducted in violation of the automatic stay, and therefore, the Motion before us must be denied.