**In re OXFORD DEV., LTD.,**
**Alleged Debtor.**

**Bankruptcy No. 90–40786–2.**

United States Bankruptcy Court,
W.D. Missouri.

June 8, 1990.

Stephen G. Mirakian, Kansas City, Mo., for Canterbury Trails Home Ass'n.

Carl S. Black, Shawnee Mission, Kan., for Oxford Dev., Ltd.

Bruce Anderson and Rick Katz, Kansas City, Mo., for alleged debtor.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Oxford Dev. Ltd. is a Missouri corporation. The first experience this Court had with it was when it filed a Chapter 13 petition before this author on March 28, 1990, at 1:00 P.M. Even occasional students of the arcane arts referred to as insolvency practice will have realized that such relief was not available to a corporation. The Court, sua sponte, scheduled a hearing, determined the existence of a corporation, and dismissed the case. Oxford was not represented by counsel, the pleadings being filed by the president, director and primary stockholder.

Unknown to Oxford, on March 27, 1990, at 3:30 P.M. Canterbury Homes Association, the principal creditor of Oxford, filed an involuntary petition against Oxford. The filing was inadvertent because Canterbury was attempting to exercise its rights to a debtor's examination in state court and intended to complete that action before filing the bankruptcy. That debtor's examination was scheduled in aid of enforcement of Canterbury's judgment against Oxford. Because the attorney handling the case was not aware that the involuntary petition had been sent to the Courthouse, he had on March 27, 1990, advised the principal of Oxford that the Honorable Thomas Clark (Circuit Judge, Sixteenth Circuit, State of Missouri) had directed that a warrant would be issued for his body arrest if said principal did not appear at 1:30 P.M. on March 28, 1990, for the examination. Also scheduled prior to, but held subsequent to, the filing of the involuntary petition was an appeal by Oxford before the Board of Engineering Appeals. In that proceeding, Ox-

ford was seeking a change or variance in its land use system. William Maher, President of Canterbury, appeared at that hearing to assert the views of Canterbury which opposed the change or variance.

On April 19, 1990, Kenneth Henderson, President of Oxford filed what he styled as an "Accusation In Contempt." That same date, Messrs, Carl S. Black and Bruce Anderson, Attorneys at Law, filed an answer to the involuntary petition, but neither attorney signed the accusation. Nevertheless, the Court treated the pleading as a Motion For Contempt and allowed a hearing thereof. At the hearing, Carl S. Black appeared for Oxford.

The two grounds pleaded as constituting the contempt were the requiring of the appearance of Mr. Henderson for the debtor's examination on March 28, 1990, and the act of Mr. Maher, President of Canterbury Homes Association, in opposing Oxford's attempt to obtain a change or variance before the Board of Engineering Appeals, both in violation of the 11 U.S.C. § 362 Automatic Stay. The Court has always addressed purported violations of the automatic stay in involuntary cases with some concern. 11 U.S.C. § 362 says:

"... a petition filed under section 301, 302 or 303 of this title (11 U.S.C. § 301, 302 or 303), ... operates as a stay, applicable to all entities ..."

11 U.S.C. § 303 governs the filing of all involuntary cases. Thus, the automatic stay is present in all involuntary cases, by definition, through the gap period and even if debtor is never adjudicated a bankrupt. Nevertheless, it seems somewhat anomalous that all acts of all creditors are totally stayed whilst the debtor is free to wander the financial meadows without any controls or inhibitions as to its acts or omissions. It can only be assumed that Congress felt putative debtors should be free from all other concerns while the question of bankruptcy is at issue thereby allowing the debtor to concentrate exclusively on that one issue.

Reviewing the complained of acts then, the Court believes that the act or acts

of Mr. Maher were not violative of § 362. The fact that an officer of Canterbury appeared at a hearing before a regulatory body which Canterbury did not cause to be convened does not constitute an automatic violation of the automatic stay. The fact that an officer of Canterbury opposed an action sought by Oxford from a regulatory body is not an automatic violation of the automatic stay. Had Canterbury post-petition initiated some action before a regulatory body that would harm Oxford or its property, that would constitute a violation. The mere participation in the process alone however, is not violative of the automatic stay.

As to the debtor's examination, a somewhat different situation is presented. Theoretically at least counsel for Canterbury knew at 3:30 P.M. on March 27, 1990, that there was an automatic stay. As to actual knowledge, the only evidence before the Court indicates lack thereof. Thus, although any act taken after 3:30 P.M. on March 27, 1990, by Canterbury or its counsel, was a violation of 11 U.S.C. § 362, the Court finds that it was unintentional and certainly not done in a spirit of contempt of the automatic stay and all its burdens.

The only testimony presented as to the debtor's examination hearing on March 28, 1990, was that the president of Oxford appeared at Judge Clark's Court Room, told counsel for Canterbury that Oxford had filed bankruptcy, (the aforementioned Chapter 13) and then departed. Counsel for Canterbury remained at the state court premises and notified the Honorable Thomas Clark as to what had happened in regards to the dual filings.

The "Accusation In Contempt" has been treated as a Motion For Contempt or a Motion For Sanctions. As such it is DENIED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.