**In re Rafael FLORES, Debtor.**

**No. 02 B 20583(ASH).**

United States Bankruptcy Court,
S.D. New York.

March 21, 2003.

and intentions with respect to orders dismissing cases with prejudice to refiling for 180 days under 11 U.S.C. § 109(g)(1) and (2). The most important issue considered here is whether a subsequent bankruptcy case filed within 180 days of this type of order is "void *ab initio*" or a "nullity" such that the subsequent filing does not invoke the automatic stay.

As amplified below, orders entered by this Court dismissing cases with prejudice for 180 days pursuant to Section 109(g) are not intended and will not be construed to void the automatic stay in the event of a subsequent filing by the debtor within 180 days, unless the order of dismissal expressly states that a future filing within 180 days will not invoke the automatic stay. Accordingly, to avoid violating 11 U.S.C. § 362(a) a creditor with knowledge of the subsequent filing must move for relief from the automatic stay before continuing legal proceedings against the debtor or his property; and a creditor who innocently continues such proceedings without knowledge of the subsequent filing must move promptly for appropriate stay relief (*e.g., nunc pro tunc* so as to validate a foreclosure sale) upon learning of the filing.

Nathan Horowitz, White Plains, NY, for Debtor.

Berkman, Henoch, Peterson & Peddy, P.C., by Martin J. Goldstein, Garden City, NY, for Secured Creditor Countrywide Home Loans, Inc.

## DECISION ON EFFECT OF DISMISSAL UNDER SECTION 109(g)

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

This decision is published to acquaint the bar with this Court's objectives, views

### Jurisdiction

This Court has jurisdiction of this contested matter under 28 U.S.C. § 1334(a) and 157(a) and the standing order of reference in this District dated July 10, 1984 (Acting Chief Judge Ward). This is a core proceeding under 28 U.S.C. § 157(b).

### Background

Debtor Rafael Flores and his wife Elsie filed their first bankruptcy petition on May 18, 2000, a "no asset" case under Chapter

7, represented by bankruptcy counsel. Secured creditor Countrywide Home Loans, Inc. ("Countrywide"), the mortgagee of the debtors' home, filed a motion for relief from the automatic stay on September 5 which was granted without opposition on September 26, 2000. The debtors received their discharge and the case was closed in October 2000. Rafael and Elsie Flores filed their second bankruptcy petition on November 1, 2000 under Chapter 13, represented by different bankruptcy counsel. On April 26, 2001 an order was entered confirming the debtors' Chapter 13 plan. On December 10, 2001 the Chapter 13 Trustee moved by notice of presentment to dismiss, but this motion was withdrawn in early January 2002. By notice of presentment dated June 24, 2002, the Chapter 13 Trustee again moved to dismiss the case with prejudice on the ground of the debtors' substantial arrears in payments to the Trustee in violation of the confirmation order. The debtors filed no submission and made no appearance in opposition to the motion to dismiss. Accordingly, this Court entered an order dated July 16, 2002 dismissing the case with the following language:

> The Chapter 13 case is hereby dismissed pursuant to 11 U.S.C. 1307(c)(6) and Section 109(g) with prejudice for 180 days from the date hereof for failure to comply with the Orders of this Court.

Following entry of the dismissal order, Countrywide reactivated the state foreclosure action and obtained a Judgment of Foreclosure and Sale on September 10, 2002. Pursuant to notice in accordance with New York law, Countrywide scheduled a foreclosure sale for November 19, 2002.

One day before the scheduled foreclosure sale, on November 18, 2002 the debtor, acting *pro se*, filed a "bare bones" petition under Chapter 7. The debtor concedes that he did not notify Countrywide or its counsel of his Chapter 7 filing until November 21, 2002.[1] Having received no notification of the bankruptcy from the debtor, and counsel having found no record of the filing on PACER, Countrywide proceeded with the foreclosure sale on November 19 as scheduled, and the property was bid in by an unrelated third party.

On December 11, 2002 the debtor, by then represented by his third bankruptcy counsel, filed an application under Section 706(a) to convert the case as of right to Chapter 13 and a motion (subsequently amended) seeking an order voiding the November 19 foreclosure sale as a violation of the automatic stay under Section 362 and authorizing the debtor to proceed with the Chapter 13 case on the ground that the debtors' default leading to the July 16, 2002 order of dismissal of the prior Chapter 13 case was not "willful" within the meaning of Section 109(g)(1).

Countrywide opposes the debtor's motion on various grounds, the most important being the contention that Countrywide proceeded with the foreclosure sale "relying on *In re Casse,* 198 F.3d 327 (2d Cir.1999)," and that "[e]ven if the filing

---

1. Footnote 1 at page 5 of Countrywide's submission states as follows:

> Counsel for Countrywide has now been able to confirm that shortly before the Foreclosure Sale, counsel for Countrywide had been told by a party interested in purchasing the Premises that the Debtor *may* have filed another bankruptcy petition. Out of an abundance of caution Counsel attempted to verify on PA-CER whether a filing had occurred. However, PACER had no record of such a filing. No filing being found, Countrywide relying on *In re Casse,* 198 F.3d 327 (2d Cir.1999), proceeded with the foreclosure sale. Even if the filing and notice thereof had been timely it would have been *void ab initio* having been filed in violation of the 180–day bar to re-file in the Order dismissing the prior case.

and notice thereof had been timely it would have been *void ab initio* having been filed in violation of the 180–day bar to refile in the Order dismissing the prior case."

## Discussion

### The automatic stay

Section 362 of the Bankruptcy Code, entitled "Automatic stay," provides in subsection (a) as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

Along with the discharge in bankruptcy, it is no overstatement to say that the automatic stay is the cornerstone of the Bankruptcy Code. *See Claussen v. Brookings County, South Dakota (In re Claussen)*, 118 B.R. 1009, 1014 (Bankr.D.S.D. 1990) ("The automatic stay is bankruptcy's cornerstone. Without it, creditors would dissipate the debtor's assets, causing piecemeal adjudication of a bankruptcy case, impairing a realistic opportunity to reorganize, and damaging any orderly equitable distribution to creditors") (citing *Midlantic Nat'l Bank v. N.J. Dep't of Environmental Protection*, 474 U.S. 494, 503, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986); *In re Stringer*, 847 F.2d 549, 551 (9th Cir.1988); *In re Corporacion de Servicios Medicos Hosp. de Fajardo*, 60 B.R. 920, 930 (D.P.R.1986), *aff'd*, 805 F.2d 440 (1st Cir.1986)). *See also*, Richard L. Stehl, *Eligibility For Damage Awards Under 11 U.S.C. § 362(h): The Second Circuit Answers the Riddle–When Does Congress Actually Mean What it Says?* 65 St. John's L.Rev. 1119, 1119–22 (Autumn, 1991) (footnotes omitted) ("The automatic stay provision of the United States Bankruptcy Code (the 'Code'), as codified at 11 U.S.C. § 362(a), is the cornerstone of federal debtor-creditor law. By prohibiting all

collection efforts pending a determination of the rights of interested parties by a bankruptcy court, the automatic stay prevents the depletion of assets from the debtor's estate and shields the debtor from harassment by creditors. Because these concerns are so fundamental, courts may penalize violations of the stay through civil contempt proceedings or by awarding damages pursuant to 11 U.S.C. § 362(h).").

█ The automatic stay is designed to preclude the rush to the courthouse, the piecemeal dismantling of the debtor's estate and the instant destruction of the debtor's economic life or business by individual creditors' actions against the debtor and debtor's property in their own interests. *See In re Colonial Realty Co.*, 980 F.2d 125, 133 (2d Cir.1992) ("The purpose of the automatic stay is 'to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another' ") (quoting *Fidelity Mortgage Investors v. Camelia Builders, Inc. (In re Fidelity Mortgage Investors)*, 550 F.2d 47, 55 (2d Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977)); *see also AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789, 798 (Bankr.S.D.N.Y.1990) ("The automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding") (citation omitted); *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir.1986) discussing the purpose of the automatic stay to prevent a "chaotic and uncontrolled scramble for the debtor's

assets" (quoting *Matter of Holtkamp*, 669 F.2d 505, 508 (7th Cir.1982)); *see Mann v. Chase Manhattan Mortg. Corp.*, 316 F.3d 1, 3 (1st Cir.2003) ("[T]he automatic stay provision is designed to forfend against the disorderly, piecemeal dismemberment of the debtor's estate outside the bankruptcy proceedings") (citing *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975–76 (1st Cir.1997)); *Pintlar Corp. v. Fidelity and Casualty Co. of New York (In re Pintlar Corp.)*, 124 F.3d 1310, 1313 (9th Cir.1997) ("Its purpose is to 'prevent[ ] dismemberment of the estate, ensure[ ] orderly liquidation, and grant[ ] the trustee time to familiarize himself with the various rights and interests involved and the property available for distribution' ") (quoting *In re Granite Partners, L.P.*, 194 B.R. 318, 336 (Bankr.S.D.N.Y.1996)) (citing S.Rep. No. 95–989, 95th Cong., 1st Sess. 82 (1978), reprinted in 1978 U.S.C.C.A.N. 5787); *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 586 (9th Cir.1993) ("A principal purpose of this provision is to preserve property for use in the reorganization of the debtor and to prevent the dismemberment of the estate") (citing *Continental Air Lines, Inc. v. Hillblom (In re Continental Air Lines, Inc.)*, 61 B.R. 758, 779 n. 41 (S.D.Tex.1986)) (quoting legislative history); *In re Hoffinger Industries Inc.*, 273 B.R. 777, 779 (Bankr. E.D.Ark.2002) ("In addition, the stay provides creditors with protection by preventing the dismemberment of a debtor's assets by individual creditors levying on the property") (quoting 3 COLLIER ON BANKRUPTCY, ¶ 362.03 (Lawrence P. King, et al. eds. 15th Ed. Rev.2001)); *In re LaPorta*, 26 B.R. 687, 690 (Bankr.N.D.Ill. 1982) (noting that a purpose of the automatic stay is to prevent dismemberment of the estate).

█ The automatic stay is the essential mechanism by which the debtor is afforded

protection of his property and time to accomplish the objectives of the Bankruptcy Code for the benefit of both the debtor and all creditors. *See Slater v. Town of Albion (In re Albion Disposal Inc.)*, 217 B.R. 394, 401–02 (W.D.N.Y.1997) ("It is clear from the legislative history of section 362 that Congress intended the automatic stay to be broadly enforced so as to further some of the paramount objectives of federal bankruptcy law").

Without the automatic stay, neither reorganization and rehabilitation under Chapters 11, 12 and 13, nor liquidation and orderly and equitable distribution of the debtor's estate under Chapter 7, would be possible. *See Constitution Bank v. Tubbs*, 68 F.3d 685, 691 (3d Cir.1995) ("The purpose of the automatic stay is . . . to protect the debtor, by stopping all collection efforts, harassment, and foreclosure actions, thereby giving the debtor a respite from creditors and a chance 'to attempt a repayment or reorganization plan or simply be relieved of the financial pressures that drove him into bankruptcy' . . . and . . . to protect creditors by preventing particular 'creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors'" (quoting *Maritime Elec. Co. Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991), *vacated* Jan. 10, 1992, *reinstated* Mar. 24, 1992)); *see also*, Richard L. Stehl, *Eligibility For Damage Awards Under 11 U.S.C. § 362(h): The Second Circuit Answers the Riddle–When Does Congress Actually Mean What it Says?* 65 St. John's L.Rev. at 1120, n. 2 (Autumn, 1991) ("Of all the Administrative Powers sections, the debtor's successful liquidation or reorganization rests primarily with § 362, which provides for the automatic stay. See H.R.REP. NO. 595, 95th Cong., 2d Sess., reprinted in 1978 U.S. CODE CONG. & ADMIN. NEWS 5963, 6296–97 [hereinafter H.R.REP. NO. 595] (creditors' race of diligence would prevent orderly liquidation or successful reorganization)"); regarding reorganizations, *see* 3 COLLIER ON BANKRUPTCY, ¶ 362.03 at 362–14 (Lawrence P. King, et al. eds. 15th Ed. Rev. 2002) ("In reorganization cases, the stay is particularly important in maintaining the status quo and permitting the debtor in possession or trustee to attempt to formulate a plan of reorganization. Without the stay, the debtor's assets might well be dismembered, and its business destroyed, before the debtor has an opportunity to put forward a plan for future operations. Secured creditors and judgment creditors might race to seize and sell the debtor's assets in order to obtain satisfaction of their claims, without regard to the interests of other creditors or the value of keeping assets together in an operating business. The stay prevents this piecemeal liquidation, offering the chance to maximize the value of the business"). Regarding liquidations, *see* 3 COLLIER ON BANKRUPTCY, ¶ 362.03 at 362–14 (Lawrence P. King, et al. eds. 15th Ed. Rev. 2002 Release 8/97) ("The stay is of considerable importance in liquidation cases. It provides immediate relief for debtors in financial difficulty and protects the trustee's ability to control the liquidation of property of the estate").

█ By its terms, the automatic stay under Section 362(a) is "applicable to all entities." It is important to emphasize that the automatic stay is intended for the protection not only of the debtor, but for the benefit of all creditors as well. *See Official Comm. of Unsecured Creds. v. PSS Steamship Co., Inc. (In re Prudential Lines Inc.)*, 928 F.2d 565, 573–74, *cert. denied, PSS S.S. Co., Inc. v. Official Comm. of Unsecured Creds.*, 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991) ("One of the principal purposes of the automatic stay is to preserve the property of the

debtor's estate for the benefit of all the creditors") (citing *Holtkamp v. Littlefield* (*In re Holtkamp*), 669 F.2d 505, 508 (7th Cir.1982); *Matter of Federal Press Co.,* 117 B.R. 942, 946 (Bankr.N.D.Ind.1989); *In re Gatke Corp.,* 117 B.R. 406, 409 (Bankr.N.D.Ind.1989)); *Matter of Walker,* 51 F.3d 562, 566 (5th Cir.1995) ("As the legislative history of § 362 notes, the automatic stay is designed to protect debtors from creditors and creditors from each other") (citing S.Rep. No. 989, 95th Cong., 2d Sess. 49–55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5835–41). *See also Constitution Bank v. Tubbs,* 68 F.3d at 691 (3d Cir.1995) ("[A] purpose of the automatic stay is . . . to protect 'creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors'" (quoting *Maritime,* 959 F.2d at 1204)); *In re Bird,* 229 B.R. 90, 94 (Bankr.S.D.N.Y.1999) ("The automatic stay is designed to offer the debtor repose from his or her creditors' collection efforts, to protect creditors from each other, and to insure an orderly liquidation or administration of the estate") (citation omitted).

 The *only* exceptions to the automatic stay are those expressly stated in Section 362(b). *See Matter of Holland,* 21 B.R. 681, 686 (Bankr.Ind.1982) ("In addition, the Legislative History of Section 362 clearly demonstrates that Congress intended the stay to have broad application. The Section itself spells out the only exceptions to be considered") (internal footnote cites to H.R.Rep. No. 595, 95 Cong. 1st Sess. 340 (1977); S.Rep.No. 989, 95th Cong.2d Sess. 54 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787); *O'Neal v. Beneficial of Tennessee, Inc. (In re O'Neal),* 165 B.R. 859, 862 (Bankr. M.D.Tenn.1994).

 Because the automatic stay is intended for the benefit of all creditors, it cannot be waived prospectively by the debtor. *Commerzanstalt v. Telewide Systems, Inc.,* 790 F.2d 206, 207 (2d Cir.1986), *aff'd in part, rev'd in part,* 794 F.2d 763 (2d Cir.1986) ("Since the purpose of the stay is to protect creditors as well as the debtor, the debtor may not waive the automatic stay") (citing *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir. 1982)); *Farm Credit of Cent. Florida, ACA v. Polk,* 160 B.R. 870, 873 (M.D.Fla. 1993) ("Since the purpose of the stay is to protect the creditors, as well as [the debtor], [the debtor] could not have unilaterally waived the automatic stay against the interest of his creditors" (citing *Commerzanstalt v. Telewide Systems, Inc.,* 790 F.2d at 207)); *Constitution Bank v. Tubbs,* 68 F.3d at 691 ("The automatic stay cannot be waived. Relief from the stay can be granted only by the bankruptcy court having jurisdiction over a debtor's case."); *LaBarge v. Vierkant (In re Vierkant),* 240 B.R. 317, 320–21 (8th Cir. BAP 1999).

In view of the centrality of the automatic stay in the administration of the bankruptcy laws, claims for the prospective abrogation of the automatic stay by mere inference or implication, not mandated by any provision of the Bankruptcy Code, must be examined critically.

### Who may be a debtor under Section 109(g)

Section 109 of the Bankruptcy Code is entitled "Who may be a debtor." Subsection (g) states as follows:

(g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor

to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

In the context of this contested matter, the most important thing to be said about Section 109(g) is to note what it does *not* say. The statute does *not* say that a subsequent filing within 180 days is void *ab initio* or a legal nullity, or that the automatic stay is void in such a filing. Indeed, the Bankruptcy Code does not articulate any consequence of a voluntary or involuntary filing by or against a debtor within 180 days of a dismissal under Section 109(g). Congress has left it to the court to determine the consequences of a filing in violation of a court order under Section 109(g), which the court must necessarily do based upon the facts of the case before it.

■ A bankruptcy court may be called upon to determine the consequences of a filing in violation of its Section 109(g) dismissal order on a motion by a creditor, the United States Trustee's Office, a Chapter 7 or Chapter 13 trustee, or on motion of the court *sua sponte*. The initial consequence of such a filing is that the burden falls on the debtor to seek modification of or relief from the 180–day bar of the dismissal order and permission to proceed with the subsequent bankruptcy case. Innumerable circumstances may justify such modification or relief, whether the 180–day bar to refiling is predicated on subsection (1) or (2) of Section 109(g).

For example, the post-confirmation default of a debtor in a Chapter 13 case resulting in a dismissal order under Section 109(g)(1) may not have been a "willful failure" within the meaning of subsection (1), but the result of accident, illness or other personal disaster. Similarly, a voluntary dismissal that technically falls within Section 109(g)(2) may in particular circumstances not implicate the objective of subsection (2).[2] Furthermore, the debtor may be able to show that he has the ability to confirm and perform a plan in the subsequent Chapter 13 case. In such a case, a blanket, judge-made rule that a subsequent filing in violation of a Section 109(g) dismissal order is a nullity or void *ab initio* would be contrary to the interests of both debtor and creditors and would confound the objectives of the Bankruptcy Code.

■ Where the debtor fails to show good cause for relief from the 180–day bar to refiling in the prior dismissal order, and *a fortiori* where the facts show a pattern of abusive conduct by the debtor, the bankruptcy court may dismiss the subsequent filing forthwith, award sanctions or grant such other and further relief as may be necessary to rectify harm to creditors or preclude further contumacious conduct by the debtor.

■ In short, a bankruptcy filing within 180 days of a prior dismissal under Section 109(g) cannot be a nullity or void *ab initio*, because there is a threshold issue to be decided, the issue of whether the debtor "may be a debtor" in the subsequent case. That issue may be decided one way or the other, depending upon the particular facts and circumstances. But one postulate is absolutely clear: the issue must be decided in the first instance *by the bankruptcy court*. It is *not* up to a secured creditor to

---

**2.** *E.g.*, a case where the party that had filed a request for relief from the automatic stay (such as the lessor of an automobile) had long since been fully satisfied (such as by payment for or relinquishment of the automobile).

make the determination that a filing in violation of the 180–day bar is void *ab initio* and, therefore, that the automatic stay does not apply, as Countrywide argues in opposing the debtor's motion in the instant case.

### The courts' limited authority under Section 105

The substantive rule of law which Countrywide would have this Court declare—that a bankruptcy filing within 180 days of a dismissal under Section 109(g) is a legal nullity and void *ab initio* and, therefore, that the automatic stay does not apply—is of such far-reaching consequence that one must examine into the authority of courts to promulgate such a rule in a body of law which is a creature of statute, not common law.

Most issues that arise in bankruptcy proceedings are determined in accordance with the express provisions of the Bankruptcy Code. Of course, judges frequently must construe the statute and on occasion make rules of law to fill in statutory interstices in factual circumstances not precisely covered by the statute. The power of courts to make decisions and enter orders in bankruptcy cases not expressly provided by the Bankruptcy Code is to be found in Section 105 of the Code. Section 105, entitled "Power of court" provides:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

(b) Notwithstanding subsection (a) of this section, a court may not appoint a receiver in a case under this title.

(c) The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28. This subsection shall not be interpreted to exclude bankruptcy judges and other officers or employees appointed pursuant to chapter 6 of title 28 [28 USC §§ 151 et seq.] from its operation.

(d) The court, on its own motion or on the request of a party in interest, may—

(1) hold a status conference regarding any case or proceeding under this title after notice to the parties in interest; and

(2) unless inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically, including an order that—

(A) sets the date by which the trustee must assume or reject an executory contract or unexpired lease; or

(B) in a case under chapter 11 of this title—

(i) sets a date by which the debtor, or trustee if one has been appointed, shall file a disclosure statement and plan;

(ii) sets a date by which the debtor, or trustee if one has been appointed, shall solicit acceptance of a plan;

(iii) sets the date by which a party in interest other than a debtor may file a plan;

(iv) sets a date by which a proponent of a plan, other than the debtor, shall solicit acceptances of such plan;

(v) fixes the scope and format of the notice to be provided regarded the hearing on approval of the disclosure statement; or

(vi) provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan.

"Section 105 is an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case." 2 COLLIER ON BANKRUPTCY, ¶ 105.01 at 105–5 (Lawrence P. King, et al. eds. 15th Ed. Rev. Rel. 76—12/00). The fundamental purpose of Section 105 is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." *Id.* at 105–5–6.

However, the court's power to establish rules, render decisions or otherwise, "make law" under Section 105 is limited. *See F.D.I.C. v. Colonial Realty, Inc. (In re Colonial Realty)*, 966 F.2d 57, 59 (2d Cir.1992) ("By its very terms, Section 105(a) limits the bankruptcy court's equitable powers, which 'must and can only be exercised within the confines of the Bankruptcy Code[,]' *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988), and 'cannot be used in a manner inconsistent with the commands of the Bankruptcy Code.' *In re Plaza de Diego Shopping Ctr., Inc.,* 911 F.2d 820, 830–31 (1st Cir.1990)"); *In re Ludlow Hosp. Soc., Inc.,* 124 F.3d 22, 28 (1st Cir.1997) (notes that Section 105(a) is not source of new substantive rights,

and may be invoked only if equitable remedy is necessary to preserve a right elsewhere provided by Bankruptcy Code); *Gouveia v. Tazbir,* 37 F.3d 295, 300 (7th Cir.1994) ("The Supreme Court has taught that any grant of authority given to the bankruptcy courts under § 105 must be exercised within the confines of the bankruptcy code" (citing to *Norwest Bank Worthington v. Ahlers, supra*)). A judge does not have the power under Section 105 to render a decision or make a rule of law that conflicts with provisions of the Bankruptcy Code or is inconsistent with the basic policies and objectives of the Bankruptcy Code. *See In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 995 (2d Cir.1990), *cert. denied, sub nom., Air Line Pilots Ass'n, Intern., AFL–CIO v. Shugrue,* 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991) ("The bankruptcy court's equitable powers cannot be exercised in derogation of other sections of the Bankruptcy Code" (citing *In re Morristown & Erie R.R. Co.,* 885 F.2d 98, 100 (3d Cir.1989)); *In re NWFX, Inc.,* 864 F.2d 593, 595 (8th Cir.1989)); *In re Momentum Mfg. Corp.,* 25 F.3d 1132, 1136 n. 4 (2d Cir.1994) ("This power is not unlimited . . . a bankruptcy court may not exercise this power in contravention of the provisions of the Code" (citation omitted)); *Chilcoat v. Minor (In re Minor),* 115 B.R. 690, 697 (D.Colo.1990) ("Section 105(a) does not authorize the court to enter orders which are in conflict with other provisions of the Code" (citations omitted)).

Turning to this case, nothing in Section 109 provides or even intimates that a filing by a party who may not be a debtor under that section is a "nullity" or "void *ab initio*". Such a filing may be subject to peremptory dismissal or even sanctions in a proper case, but these or any other consequences of a filing by a party who may not be a debtor under Section 109 must be determined by the

court in accordance with the due process rules and procedures provided by the Bankruptcy Code and Rules, in order to protect the rights and interests of both the debtor and all creditors.

Nor is there any support in Section 362 for the proposition that a filing in violation of a Section 109(g) dismissal does not invoke the automatic stay. Nothing in Section 362 so states. Quite the contrary, Section 362(a) states unambiguously that the *filing* of a petition "operates as a stay." Congress provided quite specifically in Section 362(b) an exclusive list of exceptions to the automatic stay, and a filing by one who may not be a debtor under Section 109(g), or who is barred from refiling for 180 days under a court order of dismissal, is not among them. A rule that the automatic stay is abrogated in any filing within 180 days of a dismissal which the bankruptcy court at some indeterminate time after the filing may (or may not) decide was in violation of Section 109(g) would conflict with the mandate of Section 362(a) that "a filing . . . operates as a stay" and would engraft a further exception to those provided by Congress in Section 362(b). Such wholesale rewriting of the statute the courts do not have the power to do. *See, Value T Sales, Inc. v. Mitchell (In re Mitchell)*, 279 B.R. 839, 844 (9th Cir. BAP 2002) ("It is obvious that Congress knows how to create an exception to § 362, as it has provided eighteen of them. Transfer of estate property to a BFP is not among them. Section 549(c) is a defense to an avoidance action by the trustee, no more, no less. There is no such action here. We find no convincing authority for interpreting § 549(c) as an additional exception to the automatic stay").

Putting aside the lack of any statutory authority in either Section 109 or Section 362 for a blanket rule prospectively abrogating the automatic stay, one must ask what is the practical meaning of declaring that a bankruptcy filing is a "nullity" or "void *ab initio*"? Does it mean that such a filing is simply to be ignored by creditors, the clerk's office and the court as though it had never happened? Does it mean that neither the debtor nor any creditor who may be harmed if there is no automatic stay has a right to be heard by the court in support of a different outcome? Does a rule that such a filing is a "nullity" mean that the putative case does not even need to be dismissed by court order because it was a "nullity" to begin with? Nothing in the Bankruptcy Code answers these questions because the Code simply does not contemplate that any filing is to be treated as a "nullity." The Code contemplates that an unauthorized or unlawful filing commences a "case" (with all that it entails, including the automatic stay) which remains a case until dismissed by an order of the court, generally after notice and an opportunity to be heard.

An analogy may be found in the case of an involuntary filing under Section 303. It sometimes happens that an involuntary petition may be filed by petitioning creditors under circumstances not authorized by the statute. But such a filing, although contrary to the statute, is not a "nullity" or "void *ab initio*." When an involuntary petition is filed, the automatic stay is triggered automatically upon the filing of the petition under 11 U.S.C. § 303 and remains in effect during the "gap" period.[3]

---

3. While the filing of the involuntary petition is the commencement of the bankruptcy case (*see* § 303(b)), the order for relief is not entered simultaneously as in a voluntary petition. *See* § 303(h). The time between the filing of the involuntary petition and the order for relief is known as the "gap" or "involuntary gap" period. *See* 2 COLLIER ON BANKRUPTCY ¶ 303.12 at 303–68 (Lawrence P. King, et al. eds. 15th Ed. Rev.2001).

Section 362(a) states that "*a petition filed under section 301, 302, or 303* of this title ... *operates as a stay,* applicable to all entities..." (emphasis added). Thus, creditors in an involuntary case must seek relief from the automatic stay under Section 362(d) after an involuntary petition is filed. "Despite some caselaw to the contrary, the automatic stay is effective against creditors when the involuntary petition is filed, and this approach comports with the wording of section 362 which specifically refers to section 303. Several courts have taken the position that the stay is only effective once the order for relief is entered, a position not supported by the language of section 303.... The only correct conclusion, given the wording of section 362, is that section 362 applies during the gap period, thus preventing prepetition creditors from collecting from the debtor." 2 COLLIER ON BANKRUPTCY ¶ 303.12[1] at 303–68 (Lawrence P. King et al. eds.15th Ed. Rev.2001).

Courts have found that the automatic stay is triggered upon the filing of the involuntary petition, just as upon a filing under Sections 301 and 302. *See, e.g., NLT Computer Services Corporation v. Capital Computer Systems, Inc.,* 755 F.2d 1253, 1258 (1985) ("In our view, the district court's action short-circuits the orderly procedure for the administration of bankruptcy stays by failing to recognize the legal effect of both the filing of the involuntary bankruptcy proceedings and the issuance of the automatic stay.... The stay provisions of section 362 are automatic and self-operating and those who have knowledge of the pendency of a bankruptcy action and stay are bound to honor the stay unless and until it is properly lifted"); *Matter of Eugene L. Pieper P.C.,* 202 B.R. 294, 297 (Bankr.D.Neb.1996) (the court held that "[t]he automatic stay is triggered by the act of filing an involuntary petition pursuant to 11 U.S.C. § 303, not by the

entry of an order for relief by the court"); *In re DiLorenzo,* 161 B.R. 752, 754 (Bankr. S.D.N.Y.1993) ("During the gap period, an alleged debtor is afforded different types of protection by the Code. For example, the filing of an involuntary petition creates an estate and the alleged debtor benefits from the protection of the automatic stay"); *In re Philgo Realty Co.,* 185 B.R. 676, 679 (Bankr.E.D.N.Y.1995) ("In the instant case, judgment in the Massachusetts Action was entered subsequent to the filing of the involuntary petition against the Debtor and thus the automatic stay was violated"); *Mann v. Marine Bank West (In re Omni Graphics, Inc.),* 119 B.R. 641, 643 (Bankr.E.D.Wis.1990) ("The Bank's action in moving forward with the public sale after the involuntary petition in bankruptcy was filed was an exercise of control over property of the estate which violated § 362(a)(3).... § 303(f) is intended to enable a debtor involved in an involuntary petition to continue doing business during the so-called 'gap period' before the entry of an order for relief. It is not intended as a shelter for the Bank"); *In re Oxford Dev. Ltd.,* 115 B.R. 216, 217 (Bankr. W.D.Mo.1990) ("The Court has always addressed purported violations of the automatic stay in involuntary cases with some concern. 11 U.S.C. § 362 says: '... a petition filed under section 301, 302 or 303 of this title (11 U.S.C. § 301, 302 or 303), ... operates as a stay, applicable to all entities....' 11 U.S.C. § 303 governs the filing of all involuntary cases. Thus, the automatic stay is present in all involuntary cases, by definition, through the gap period and even if debtor is never adjudicated a bankrupt"); *Rothenberg v. Ralph D. Kaiser Company (In re Rothenberg),* 173 B.R. 4, 14 (Bankr.D.D.C.1994) (after the involuntary petition was filed against the debtor, the court noted that "RDK's actions were an attempt to exercise control

over property of the estate, which is likewise stayed pursuant to section 362(a)(2). The court does not believe that section 303(f) applies to excuse RDK's actions which were clear violations of the automatic stay . . .").[4]

Finally, as already noted circumstances may exist where the fundamental policies and objectives of the Bankruptcy Code—relief and rehabilitation for the debtor, and protection of creditors' rights to equitable and ratable distribution—will be served only by granting the debtor relief from the putative 180–day bar to refiling under Section 109(g) and court orders entered thereunder. In such cases, the blanket rule urged by Countrywide would frustrate the purposes and provisions of the Bankruptcy Code. The court does not have the power under Section 105 to establish a blanket rule at odds with the express provisions of Section 362(a) and (b) which in many cases would confound the mandate of Section 105 to do only that which is "necessary or appropriate to carry out the provisions of this title."

### The decision in In re Casse

This Court's conclusion that debtor Flores' November 21, 2002 filing did invoke the automatic stay notwithstanding the fact that the filing was in violation of this Court's July 16, 2002 dismissal with prejudice under Section 109(g) is entirely consistent with the decision of the Court of Appeals in *In re Casse*, 198 F.3d 327 (2d Cir.1999). In April 1990 the mortgagee of the Casses' home instituted foreclosure proceedings in state court. As summarized by the Court of Appeals, "[t]he Casses thereupon embarked upon a series of filings under the Bankruptcy Code, whose sole and transparent purpose was to frustrate [the mortgagee's] foreclosure proceedings." 198 F.3d at 329. On motion of the United States Trustee, the bankruptcy court dismissed the Casses' third Chapter 11 filing with an order stating that "this case commenced under Chapter 11 of the Bankruptcy Code be, and hereby is, dismissed with prejudice." *Id.* at 331. On the eve of the next foreclosure sale scheduled by the mortgagee, debtor Casse filed a fourth bankruptcy case, this time under Chapter 13 "in an effort to obtain yet another stay of the foreclosure sale of the Casses' residence." *Id.* Notwithstanding this filing, the mortgagee proceeded with the foreclosure sale. The debtor then made a motion to vacate the foreclosure sale on the ground that the sale was in violation of the automatic stay. The bankruptcy court denied the debtor's motion to vacate the foreclosure sale, and in the same order the bankruptcy court dismissed the debtor's Chapter 13 *"nunc pro tunc"* to the date of filing. *Id.* at 332. The district court affirmed the bankruptcy court's order and the district court's deci-

---

4. Some courts believe, however, that the automatic stay is not triggered upon the filing of an involuntary petition. *See, In re Acelor,* 169 B.R. 764, 765 (Bankr.S.D.Fla.1994); *Chalmers v. Benson (In re Benson),* 33 B.R. 572, 574 (Bankr.N.D.Ohio 1983); *In re Alpine Lumber and Nursery,* 13 B.R. 977, 979 (Bankr. S.D.Cal.1981); *Kreidle v. Internal Revenue Serv. (In re Kreidle),* 146 B.R. 464, 470 (Bankr.D.Colo.1991); *Federal Deposit Insurance Corp. v. Cortez,* 96 F.3d 50 (2d Cir.1996). Chief Bankruptcy Judge A. Jay Cristol has suggested "that 11 U.S.C. § 362(a) be amended to read 'an *order for relief entered in a case*

filed under section 301, 302 or 303 of this title . . . operates as a stay' " (SUGGESTION FOR THE NATIONAL BANKRUPTCY REVIEW COMMISSION AND CONGRESS: NOTWITHSTANDING UNARTFUL DRAFTSPERSONSHIP, CONGRESS INTENDED THE AUTOMATIC STAY TO BECOME OPERATIVE UPON ENTRY OF AN ORDER FOR RELIEF, 4 Am. Bankr.Inst. L.Rev. 505, 506 (1996)). Perhaps, but Section 362(a) has not been so amended, and many professionals in the field recognize that the automatic stay may be just as vital in involuntary cases as in voluntary filings. Abusive conduct such as that in *Cortez* can always be rectified by appropriate court orders.

sion and order was affirmed by the Court of Appeals.

Two important points must be made concerning *In re Casse*. First, neither the bankruptcy court nor the Court of Appeals held or implied that there was no automatic stay in Casse's fourth bankruptcy filing within 180 days of the bankruptcy court's dismissal of his third filing "with prejudice." Quite the contrary, both the bankruptcy court and the Court of Appeals recognized that Casse's fourth filing, although in violation of a court order, *did* invoke the automatic stay. The bankruptcy court dismissed Casse's fourth case *nunc pro tunc* to the date of filing for the precise purpose of retroactively abrogating the automatic stay and thereby validating the foreclosure sale, which would otherwise have been in violation of the automatic stay. This was explicitly recognized in the Court of Appeals decision, which stated:

> Accordingly the bankruptcy court dismissed that Chapter 13 case as void *ab initio, thereby erasing the automatic stay* upon which the debtor-appellant relied to vacate the foreclosure. (emphasis supplied)

The phrase "erasing the automatic stay" makes clear the Circuit Court's understanding that there was an automatic stay which had to be erased. The context makes clear that the Court of Appeals' use of the words "dismissed that Chapter 13 as void *ab initio*" was simply a way of referring to the fact that the bankruptcy court had dismissed the fourth filing *nunc pro tunc* to the date of filing. The words "void *ab initio*" were not used in the sense of the filing having been a legal nullity which did not invoke the automatic stay.

The second important observation to be made concerning the Court of Appeals' decision in *In re Casse* concerns the critical importance which the Court attached to

the bankruptcy court's intent and purpose in entering its order dismissing Casse's third bankruptcy filing "with prejudice." The Court of Appeals stated:

> Casse's appeal turns upon the intent and effect of the bankruptcy court's July 16, 1997 order, quoted in its entirety *supra* ("the Order"). Two separate but related questions arise: (1) Did Bankruptcy Judge Feller intend by the Order to bar any subsequent filing by Casse under the Bankruptcy Code, including a filing under Chapter 13, or only further Chapter 11 filings? (2) If the bankruptcy judge intended by the Order to bar any subsequent filing, did such order lie within his powers under the statutory scheme?

*Id.* at 333. The Court then went on to analyze these questions at length.

Because the Court of Appeals has placed primary importance on the bankruptcy court's intent and purpose in entering its orders, it is appropriate to turn now to this Court's intent and objectives in entering orders with prejudice to refiling for 180 days under Section 109(g).

### Dismissal orders "with prejudice"

Debtors in Chapter 13 cases have a number of routine obligations imposed under the Bankruptcy Code and Rules, the United States Trustee's Office or the Chapter 13 Trustee in order to confirm and fully perform a plan. Experience has shown that, unless these obligations are enforced by the court, with appropriate consequences for failure to comply, some debtors or their counsel will routinely fail to perform their obligations or fail to do so timely, resulting in material delays and on occasion abuse of the system and consequent prejudice to creditors. Even the remedy of dismissal may fail to deter such conduct if the debtor has the unfettered ability to refile on substantially the same

papers at a cost of little more than the filing fee.

To provide an effective consequence to deter those who would habitually ignore or delay performance of their obligations as debtors, the bankruptcy courts in this district have adopted the practice of entering a standard form order at the commencement of every Chapter 13 case embodying all of the routine obligations imposed on a Chapter 13 debtor. The standing order provides that the debtor may apply to the court for good cause for relief from or additional time to perform any of the obligations set forth in the order. Absent such application, violation of the standing order will result in an order of dismissal with prejudice to refiling within 180 days under Section 109(g)(1).

■ However, it is not and never has been this Court's intent, understanding or contemplation that a subsequent filing within 180 days of such an order would be a "nullity" or "void *ab initio*" such that the subsequent filing would not invoke the automatic stay, or even that the subsequent filing would necessarily result in peremptory dismissal without affording the debtor an opportunity to be heard. As already noted, there may be valid reasons for concluding that the debtor should be relieved of the prejudicial effect of the prior dismissal. The objectives of the Bankruptcy Code and the interests of both the debtor and creditors cannot be served by a blanket rule that the subsequent filing within 180 days is a legal nullity automatically abrogating the automatic stay. The legitimate interests of secured creditors may be fully protected in appropriate cases by dismissal *nunc pro tunc* to the date of filing, or relief from the automatic stay *nunc pro tunc* to the date of a foreclosure sale.

■ In rare cases of persistent abuse of the bankruptcy laws by a debtor seeking to avoid foreclosure, with no genuine intention to confirm a plan of reorganization, this Court has entered orders of relief from the automatic stay or dismissal with prejudice such that the filing of a future bankruptcy by the debtor or other persons claiming an interest in the property in question will not invoke the automatic stay as to a specific secured creditor. It is only if the order specifically so provides that this Court would intend or contemplate that a future bankruptcy filing would not invoke the automatic stay, and then only as to a specified creditor and property.

### Contrary authority

A number of cases have expressed the contrary view, that a filing within the 180–day bar of Section 109(g) is a nullity so that the automatic stay is not effective. Several of these cases illustrate the unsettling consequence of the rule they espouse—that one cannot know whether the automatic stay is or is not effective at the time of a post-petition event (such as a foreclosure sale to an independent third party) until the bankruptcy court later decides whether the debtor may or may not be a debtor under Section 109(g).

For example, in *In re Walker,* 171 B.R. 197 (Bankr.E.D.Pa.1994) the debtor filed a motion for injunctive relief, contempt and sanctions for violations of the automatic stay by various parties including the secured creditor and the Sheriff of Bucks County who were responsible for conducting a foreclosure sale of the debtor's family home two days after the debtor filed a second bankruptcy case within 180 days of dismissal of his first case. After quoting Section 109(g), the court said:

> We revisit this issue because of the importance of its application to this case and to other future cases. At the outset, we note that a filing contrary to § 109(g) is void *ab initio* and does not

effect a valid automatic stay. *See Miller v. First Federal Savings & Loan Ass'n of Monessen,* 143 B.R. 815, 820 (Bankr. W.D.Pa.1992). Therefore, this issue is vital to the instant Motion as well as addressing several recurrent actions which periodically arose about the scope of § 109(g).

171 B.R. at 202. After a lengthy analysis of the facts, the court concluded that neither subsection (1) nor (2) of Section 109(g) applied and, accordingly, that the debtor *was* entitled to be a debtor under Section 109. The consequence of that ruling, of course, was that the debtor's second filing was not void *ab initio* and, therefor, there *was* an automatic stay which would have been violated by foreclosure sale of the debtor's property.[5]

The significant point in *In re Walker* is that none of the parties at risk (the debtor on the one hand, and on the other the secured creditor, the Sheriff and the purchaser at the foreclosure sale) could know whether there was or was not an automatic stay in the second case until the bankruptcy court's *ex post facto* determination after a trial hearing of whether the debtor's second filing constituted a violation of Section 109(g)(1) or (2), a decision which the court characterized as "a close call." 171 B.R. at 202.

The decision cited in the *Walker* case, *Miller v. First Federal Savings & Loan Ass'n of Monessen (In re Miller),* 143 B.R. 815, 820 (Bankr.W.D.Pa.1992), also stated the blanket rule that a debtor who files a subsequent bankruptcy petition in violation of Section 109(g) "has *no standing* to obtain any relief from that filing, including the automatic stay" (143 B.R. at 820; emphasis in original), explaining that "The

purpose of § 109(g)(1) of the Code is to *prevent* the reimposition of stays and controls under the Code when the prior performance of the debtor was willfully inconsistent with their responsibilities to the court" (*id., emphasis in original*). The court noted that the principal issue "to be determined is whether that [the prior] dismissal was for 'willful' failure to abide by orders of this court." 143 B.R. at 818. The court then proceeded with a detailed analysis of the facts and concluded that the prior dismissal was indeed for "willful" failure to abide by an order of the court. It followed that the automatic stay was a "nullity from the outset" and was "null and void from the time of its issuance." *Id.*

As in the *Walker* case, none of the parties in *In re Miller* could know whether the automatic stay was effective or not until the bankruptcy court determined that the filing violated Section 109(g)(1). If the court had concluded on the evidence that the debtor's conduct in the first case was not "willful" (as the court did in *Walker*), the debtor's filing of the second case would not have violated Section 109(g), the automatic stay would have been effective and the post-petition foreclosure sale would have violated the automatic stay rendering the sale void or voidable and subjecting the secured creditor, the sheriff and perhaps others to sanctions.

In *In re Prud'Homme,* 161 B.R. 747 (Bankr.E.D.N.Y.1993) the secured creditor moved to lift the automatic stay. The bankruptcy court denied the motion for stay relief, stating: "The sole reason for denying this relief to which the Movant would otherwise clearly be entitled, is that in the opinion of this court, the automatic stay is not invoked upon a filing by an

---

**5.** The court in *Walker* went on to deny the debtor's motion, however, because prior to his second bankruptcy the debtor had reconveyed the family home to his mother, and the

court held that the automatic stay in the debtor's case did not prevent the foreclosure sale of property belonging to the mother.

ineligible debtor.... Where a debtor's lack of entitlement under § 109(g) is clear and unquestioned, the filing is void *ab initio* and there exists no automatic stay for this court to address." 161 B.R. at 751. The difficulty with this formulation, of course, is that it is never "clear and unquestioned" that a debtor may not be a debtor under Section 109(g) until a court makes that determination. Unless one accepts the proposition that a secured creditor may make the determination that a filing is in violation of Section 109(g), entitling it to proceed with garnishment, foreclosure, eviction, or other process against the debtor or the debtor's property, the automatic stay under Section 362(a) which is triggered by the filing must be respected until the court makes the determination that the debtor may or may not be a debtor under Section 109(g) and enters an appropriate order based on that determination.

A rationale for the blanket rule that a filing within 180 days of a Section 109(g) dismissal is a nullity which does not invoke the automatic stay was articulated in *In re McKay*, 268 B.R. 908, 910–911 (Bankr. W.D.Va.2001). The syllogism proffered in *McKay* is, in substance, as follows: Section 362(a) states that "a petition filed under section 301, 302, or 303 of [the Bankruptcy Code] ... operates as a stay ..."; Section 301 states that a case is commenced by the filing of a petition "by an entity that may be a debtor"; if a petition is filed by one who may not be a debtor under Section 109(g) the filing is a nullity and will be treated as if no case had been filed; if no case has been filed, the automatic stay under Section 362(a) is not invoked. To the same effect, *see In re Hollberg*, 208 B.R. 755 (Bankr.D.D.C. 1997), in which the court said:

> Because a case cannot be commenced regarding a debtor whose case has been dismissed less than 180 days ago under

§ 109(g), any document labeled "petition" filed regarding the debtor in the 180–day period does not commence a case and does not constitute a petition. Accordingly, such a "petition" does not give rise to an automatic stay under § 362(a).

208 B.R. at 756.

The problem with this line of reasoning is that it indulges the fiction that a petition filed with the bankruptcy court is not a petition, and that the bankruptcy case commenced by the filing of such a petition is not a case, and therefore that the automatic stay is inapplicable. The fiction is unmasked when one considers that no one can know whether the debtor may be a debtor under Section 109(g) until the bankruptcy court decides the issue. Until the court makes that determination, the petition must be treated as a petition and the case must be treated as a case. The bankruptcy court may decide on the particular facts before it that a debtor who files within 180 days of a Section 109(g)(1) or (2) dismissal may nevertheless be entitled to be a debtor under the Bankruptcy Code, as the court did in *In re Walker*, as the court might have done in *In re Miller* if the facts had been different, and as this Court has done on occasion when the facts warranted.

The practical consequences of the issue here considered are very real and very significant. A blanket rule that a filing within 180 days of a dismissal under Section 109(g)(1) or (2) does not invoke the automatic stay has been and will be construed by Countrywide and other creditors as authorization to proceed with state law remedies notwithstanding that the debtor has filed a petition with the bankruptcy court. Proceeding to judgment, garnishment, foreclosure sale, eviction and other creditor remedies may have grievous con-

sequences for not only the debtor but other creditors as well. If the bankruptcy court ultimately determines on the facts that the debtor *was* entitled to be a debtor under Section 109(g) despite the filing within 180 days of the prior dismissal—*i.e.*, if it is subsequently determined that the filing was not a nullity and, therefore, there was an automatic stay—transactions consummated in violation of the automatic stay will be void or voidable. In such a case, the debtor may have suffered material damages which must either be absorbed by the debtor or recovered by the debtor from the secured creditor and others guilty of having violated the automatic stay which they believed to be a nullity under the blanket rule.[6]

The better rule appears to this Court to be to recognize that a petition filed with the bankruptcy court is a petition, and the case thereby commenced is a case, unless and until the bankruptcy court determines that the debtor did not have the right to be a debtor, in which case the court can dismiss the case and fashion such other relief as may be necessary to protect the rights of secured or other creditors. *See, e.g., Rowe v. Ocwen Federal Bank & Trust,* 220 B.R. 591 (E.D.Tex.1997) (the bankruptcy court, affirmed by the district court, recognized that there was an automatic stay and lifted the automatic stay *nunc pro tunc* or *ab initio* upon the court's finding that the debtor's Chapter 13 petition was filed in bad faith and in violation of the 180–day ban); to the same effect, *see In re Pappalardo,* 109 B.R. 622 (Bankr.S.D.N.Y.1990).

### The facts in this case

Countrywide's foreclosure sale the day after the debtor's *pro se* filing under Chapter 7 was a violation of the automatic stay. However, it appears that the violation was unwitting, in that neither Countrywide nor its counsel had actual notice or knowledge of the debtor's filing prior to the foreclosure sale.

Upon learning that the debtor had filed for bankruptcy prior to the foreclosure sale, Countrywide should have promptly applied to this Court either for relief from the automatic stay or for dismissal of the bankruptcy case *nunc pro tunc* so as to erase the effect of the automatic stay and thereby validate the foreclosure sale. By failing to do so, Countrywide risked sanctions for violating Section 362(a).

Nevertheless, it is my conclusion that on the facts of this case the relief sought by the debtor (an order vacating the foreclosure sale) is not warranted. This debtor had ample experience in the bankruptcy court, having filed two prior cases under Chapter 13 represented in each case by experienced bankruptcy counsel. The debtor had ample opportunity to oppose the Trustee's motion to dismiss his case with prejudice, or to show that his default was not willful and that the dismissal should not be with prejudice under Section 109(g). He did not do so. The debtor had ample opportunity after the July 16, 2002 dismissal order to apply to the Court for relief from the 180–day bar of the dismissal order prior to filing his third bankruptcy case, or to hire bankruptcy counsel to as-

---

6. Such an example occurred in a recent case in this Court. A secured creditor, asserting like Countrywide in this case that a subsequent filing within 180 days of a dismissal under Section 109(g) was a nullity, conducted a foreclosure sale of the debtor's home to a third party who had no notice of the bankruptcy filing. The debtor and his creditors were thereby deprived of the equity in their property, and the innocent purchaser also suffered damages as a consequence of the violation of the automatic stay. The debtor sought to void the sale and both the debtor and the third party purchaser sought substantial damages from the secured creditor for violating the automatic stay. That controversy was resolved by settlement.

sist him, long before the November 19, 2002 foreclosure sale. He did not do so. The debtor had an opportunity after filing but before the foreclosure sale to notify Countrywide of his third bankruptcy filing, but he did not do so. The debtor, although now represented by competent bankruptcy counsel, has not shown that the foreclosure sale deprived him or his creditors of any equity in the property. Perhaps most important, the property was sold at the foreclosure sale to an independent third party, whose rights would be affected by an order voiding the foreclosure sale as a violation of the automatic stay.

Upon the foregoing facts, I conclude that the debtor has not sustained his burden to show cause why he should be relieved of the 180–day bar to refiling in the July 16, 2002 dismissal order or why the Court should vacate the foreclosure sale which took place the day after his unauthorized and undisclosed filing.

### Conclusion

The debtor's motion to void the foreclosure sale as a violation of the automatic stay, to relieve the debtor of the July 16, 2002 dismissal order *nunc pro tunc* and to convert the case to Chapter 13 is denied. Counsel for Countrywide is directed to settle an order on ten days' notice denying the debtor's motion in its entirety and dismissing this case *nunc pro tunc* as of the date of filing, November 18, 2002, so as to validate the November 19, 2002 foreclosure sale by effectively erasing the automatic stay.